## No. 11,725.

GARRETT, BLANKS ET ALS. VS. THOMAS Y. ABY, MAYOR, ET AL;
R. W. ALEXANDER ET AL., INTERVENORS.

Whenever an election is held under and in conformity with the provisions of Act 76 of 1884, relative to the granting or withholding of licenses for the sale of intoxicating liquors, the majority of votes cast in the parish, if an election has been held for a whole parish, shall be against granting licenses for the sale of intoxicating liquors, said vote or decision shall govern and control the action of any ward, incorporated town, or city within the limits of said parish as fully and completely as if said election had been held by authority of said ward, town or city.

The provisions of Act 76 of 1884, in terms, repeal the provisions of the statutes of 1871, 1873 and 1876, which grant and amend the charter of the city of Monroe, in the parish of Ouachita, in so far as they confer any exclusive authority in said city over the sale or prohibition of the sale of intoxicating liquors.

The legislative charter of a municipal corporation being a special act, apart from the body of general laws of the State, it can not be repealed by a general law of the State, unless that intention clearly appears from the terms of the general act; and that the general act shall repeal the special law, it must appear that the provisions of the former are irreconcilably inconsistent with those of the latter.

The General Assembly is the sole and exclusive judge of the time and manner in which the police power shall be exerted, and its action must be liberally construed.

APPEAL from the Fifth Judicial District Court, Parish of Ouachita. Potts, J.

*Stubbs & Russell* for Plaintiffs, Appellees.

*Thomas O. Benton* for Defendants, Appellants.

*Fred. G. Hudson* for Intervenors, Appellants.

The opinion of the court was delivered by

WATKINS, J. This suit has for object to enjoin and restrain the city of Monroe, situated in the parish of Ouachita, in this State, through its mayor, the secretary and treasurer, and the collector of licenses and taxes as well, each one, and all of them, from accepting any money, or acknowledging the tender of any money, or granting any receipt, license, permit, or authority from, or to any one, to exercise the calling of retailing any spirituous, or intoxicating

liquors, or keeping a saloon, or drinking house in the parish of Ouachita, or in the city of Monroe.

It is further to restrain said officers, severally, from doing any act tending to nullify the will of the people, as expressed at a certain election that was held on the 21st of December, 1894.

The prayer of the petitioners is to that effect, and the parties enumerated were duly cited and enjoined.

The acting mayor, in the absence of the mayor, and the assessor and collector of city taxes, appeared and answered; and, quite a number of private individuals intervene, setting up a right adverse to that of the plaintiffs, joining the defendants, and resisting plaintiffs' demands.

On the issues thus joined, there was judgment in favor of the plaintiffs, and against the defendants and intervenors, perpetuating the injunction and restraining the aforesaid officers of the city of Monroe, and the City Council "from accepting any money, or acknowledging the tender of any money, or granting any receipt, license, permit, or authority from, or to any one, to exercise the calling of retailing spirituous liquors, or keeping a saloon, or drinking house in the parish of Ouachita, or in the city of Monroe, as directed by the election held in the parish of Ouachita, on the 21st of December, 1894," etc., from this judgment the parties defending and intervening appealed.

From the foregoing it will be perceived that it was decided at a parochial election, held in the parish of Ouachita, on the 21st of December, 1894, under the superintendence of the parochial authorities, that "local option" should prevail throughout the parish, and within the precincts of the city of Monroe as well; and that thereafter no receipt, license, permit or authority should be granted to any one within the limits of the aforesaid parish, including the city of Monroe, authorizing the vending or sale, by retail, of any spirituous liquors, until such prohibition should be recalled. It will be further perceived that the aforesaid authorities of the city of Monroe denied the efficacy of said *parochial* election in so far as the city was concerned, and insisted upon their right to continue to grant such license, notwithstanding such election.

The intervenors are individuals whose business will be prejudicially affected by said election if the decree of the District Court should be maintained, and the injunction continue to be perpetuated in respect to the authorities of the city of Monroe.

Having premised this much, it will now be necessary for us to look into the pleadings and ascertain the exact issues which were raised and decided below, and which are determinable by our decree.

Making this examination we find that the terms of the judgment have pretty accurately followed the allegations of the petition, answer and intervention. For the claim of the plaintiffs is that a large number of the citizens and electors of the parish of Ouachita and city of Monroe presented petitions to the police jury of the former, and the common council of the latter, praying for the submission to the qualified voters of the city and parish, respectively, of the question as to whether the sale of intoxicating liquors should be permitted or discontinued.

That the City Council deferred action until such time as the police jury should act; and the police jury having taken action and ordered an election, said council decided not to take any action whatever.

That at the election there was a large vote, in both city and parish, and a decided majority—aggregating 426 votes—of the votes cast was in favor of prohibition; and of this majority 211 were cast in the city of Monroe.

That the police jury regularly received, compiled and promulgated the election returns, and gave due notice of the result ascertained to the State Auditor and the sheriff and tax collector of the parish.

Ascertaining it to be the purpose of the city authorities to issue licenses for the fiscal year 1895 to retail dealers in spirituous liquors, in spite of the aforesaid election and its declared result, plaintiffs sought and obtained an injunction.

The defendants in their answer admit the election, and its *prima facie* result, but deny that the right of the city to issue licenses was thereby put at issue, decided, or in any manner affected.

They aver that under the original charter of the city of Monroe, of 1871, and its amendments, the City Council had, and still has, the exclusive power and control over the subject of taxes and licenses; and of the management and control of barrooms, drinking houses and saloons; and that in respect of those subjects said council is entirely "independent of the authority of the parish of Ouachita."

They further specially aver "that their chartered rights are *above and beyond the control of the Legislature* under the restrictions of the

Constitution of 1879; and certainly can not be affected by any action of the police jury of the parish of Ouachita."

They especially deny any acquiescence on the part of the city council of Monroe, in said election, or the result thereof; and they also deny that a majority of the voters of the city voted at the election; and they affirm that if the question had been submitted to them directly, in their opinion a majority of them would have voted against prohibition—the inference being that many persons who were opposed to prohibition refrained from voting on the ground that the city would not be affected by the result of the election.

They further specially deny that the provisions of Act 76 of 1884, under authority of which the election was held, did, in terms, or was intended to have any application to the city of Monroe; or that it did, or was intended to amend, modify, alter, or change *any* of the chartered rights of the city of Monroe.

The intervenors set out in their petition, substantially, the same defences as those we have outlined from the defendant's answer.

But the mayor of the city and the city treasurer took a different view of the situation, and, in a separate answer, admit the facts and allegations of the plaintiffs' petition, and declared themselves opposed to issuing licenses for 1895 to liquor dealers in the city of Monroe, "after the result of the election on the question by Ouachita parish, including said city."

They further aver that at a meeting of the City Council, held on the 13th of November, 1894, the question of holding an election and of temporarily issuing licenses until the police jury should act, was considered; and that at a meeting of the council, subsequently held on the 19th of November, 1894, a resolution was adopted, substantially to the effect that the police jury having ordered an election throughout the parish, it was uunecessary for the city to do so, consequently no election was ordered by the City Council.

The answer then avers that " it was understood that the election and result of election ordered by the parish *would be binding on the city of Monroe.* That the election ordered by the police jury resulted adversely to the issuance of licenses, *both in the parish of Ouachita and city of Monroe,* by large majorities in each.   Your respondents, therefore, regarding the election ordered by the police jury, and the result of said election, as including and binding alike the city of Monroe (and the parish), have no opposition to make to plaintiffs'

demand on the question presented. They therefore pray to be finally discharged, and for general relief.

From the foregoing analysis of the pleadings, the leading question for determination seems to be whether the city of Monroe is protected by its charter from the effect of the parochial election, so that the City Council may *legally* continue to issue licenses to retailers of spirituous liquors within the city limits, just as it had done previous to said election.

Viewed in this light, all questions of fact appertaining to the election, and the promulgation of its result, are pretermitted from the discussion. And, in this situation, the estoppels set up by the plaintiffs are of no consequence; for if, as a matter of law, the statute under which the election was held did not contemplate a repeal *pro tanto* of the charter rights of the city *contra*, the act of any one or more of the defendants and intervernors, in voting at said election, could not validate it and make it binding on the city. Indeed, it may well be doubted that the City Council could, by its silence and inaction, acquiesce in the result of the election, and accomplish the divestiture of charter rights beyond the scope of legislative mandate under which the election was held.

After the answer of the mayor and the treasurer had been filed, the plaintiffs appeared, by way of exception, to the effect that the intervenors had no right of action remaining in themselves because of the fact that the mayor had joined their standard, leaving no controversy between them and the city, and therefore the intervention ought to be dismissed.

This is not correct as a legal proposition for the reason that, after an intervention has been filed in a pending suit, whether joining the defendant or opposing both parties, the intervenors acquire the right to have the issues they present judicially determined, notwithstanding the plaintiffs' petition be subsequently dismissed, or the defendants' answer withdrawn. For, although in the first instance an intervention is allowed *ex gratia*, when filed it is not within the power of his adversary, by pleading or withdrawal, to put his intervention out of court. Suberville vs. Adams, *ante.*, 68.

Addressing our attention to the principal question in the case, we will examine first the provisions of the statute under which the election was held, and ascertain from them what was the object had in view by the Legislature in its enactment, and by an examination and

comparison of its terms determine its evident import.   Act 76 of 1884.

The title of this act is, "to amend and re-enact Sections 1211 and and 2778 of the Revised Statutes, relative to the granting or withholding licenses for the sale of intoxicating liquors."

An examination and comparison of those two sections of the Revised Statutes discloses them to be precisely the same, the former being placed under the title of "*drinking houses*," and the latter under that of "*police jury*."

Referring to the act of 1884, we find that it embodies literally the language of the Revised Statutes, only interchanging "*city council* of the city of New Orleans" for "*board of aldermen, etc.;*" but it superadds a very important *proviso*.

The general tenor of the act is, that the police juries of the several parishes of the State, the municipal authorities of the several towns and cities thereof, "shall have exclusive power to make such rules and regulations for the *sale, or prohibition of the sale of intoxicating liquors* as they may deem advisable; and *to grant* or *withhold licenses from drinking houses* and shops within the limits of any city, parish, ward of a parish, or town, as a majority of the legal voters of any city, ward of a parish, or town, may determine by ballot; and the said ballot shall be taken whenever deemed necessary by the police juries of the several parishes, the municipal authorities of the several cities or towns, and the City Council of the city of New Orleans; *provided* that said election shall not be held more than once a year."

Thus far the act follows the words of the revised statutes; but it thus proceeds:

"And *provided further*, that whenever, at an election held under this section, the majority of votes cast in a ward, if only a ward election has been held, or the majority of the votes cast in a parish, if an election has been held for a whole parish, shall be against granting licenses for the sale of intoxicating liquors, said vote, or decision, *shall govern or control the action of any ward, incorporated town or city within the limits of said ward or parish, as the case may be, as fully and completely as if said election had been held by authority of said town or city.*"

The foregoing constitutes the *entire* act, except its date, and the signatures of the Governor and Secretary.

Comment on its meaning, and intended import, is quite unneces-

sary, as they are too obvious for discussion.  They are *exactly* appli-
cable to the question we have under consideration.  Words could
not be plainer, nor those of greater pertinency could not have been
selected by the framers of that statute, to convey the legislative
purpose to have been, to furnish the people of a parish, ward, city
or town, with plenary power over the sale, or prohibition of the sale,
of intoxicating liquors.

The language of the statute, in terms, declares that the vote or
decision of the parish, *shall govern and control* the *action* of any
ward, *incorporated town or city*, within the limits of any parish, as
*fully and completely as if said election had been held by authority of
said town or city*.

One of the contentions on the other side is, that, in so far as Act
76 of 1884 purports to repeal, or amend, either the original charter
of the city of Monroe (Act 102 of 1871), or the act amendatory
thereof (Act 37 of 1873), it is violative of the prohibition contained
in Art. 46 of the Constitution of 1879, which declares that the Legis-
lature "shall not pass any local or special law   *   *   *   amending
or renewing, extending or explaining the charter" of any corpora-
tion.   Const., Art. 46.

It would seem to be a complete answer to that objection to say
that the act drawn in question here is neither a *local* or *special* law,
nor does it purport to be.   It purports to amend two sections of the
Revised Statutes which existed prior to the adoption of the Consti-
tution, and was not repealed by it.   It was saved from repeal by the
terms of Art. 258 thereof.

Another contention is, that Act 76 of 1884 contravenes the pro-
visions of Art. 47 of the Constitution, which is couched in the fol-
lowing terms, viz:

"The General Assembly shall not indirectly enact special or local
laws by the partial repeal of a general law; but laws repealing local
or special laws may be passed."

Recurring to the act we find that neither the title nor the body of
the act purports to *enact* a "special or local law" of any kind, di-
rectly or indirectly.   The local or special laws on which the defend-
ants and intervenors place reliance are those of 1871, 1873 and 1876,
granting a charter to the city of Monroe and amending it; and the
claim of the plaintiffs is, that Act 76 of 1884, in terms, *repeals* the
provisions of said three prior statutory enactments, in so far as they

confer on the city of Monroe any *exclusive* authority over the *sale*, or the *prohibition* of the sale, of intoxicating liquors.  Consequently, the Act of 1884 does not come within the reach of the prohibition of Art. 47; on the contrary, it comes directly and immediately within the scope and meaning of the second clause of that article, viz. : " but laws *repealing* local or special laws may be passed."

Another contention of the defendants and intervenors is, that Act 76 of 1884 is in conflict with the provisions of Art. 234 of the Constitution, which declares that " the General Assembly shall not remit the forfeiture of any corporation now existing, *nor renew, alter or amend the same,* nor pass any general or special laws for the benefit of such corporation, except upon the condition that such corporation shall thereafter hold its charter subject to the provisions of the Constitution."

The words italicized by us are those referred to and particularly relied upon by defendants and intervenors.

We think it evident that the framers of the organic law exclusively directed that article at *private* corporations; for to what *other* corporations could the last phrase of the article apply?

It must have been intended to refer to that provision of Article 240 which declares that " the term *corporation as used in this constitution* shall be construed to include all joint stock companies or associations having any power or privileges not possessed by individuals or partnerships."

If this were not so the provisions of Article 234 would be in conflict with the clause of Article 47, which declares that "laws repealing local or special laws may be passed." 

It would be strange indeed if the framers of the Constitution had deliberately taken away from the Legislature the power of amending, revising or repealing, *in toto*, the charters of municipal or *quasi* political corporations, sharing the exercise of governmental control and authorized to *levy, collect and disburse licenses and taxes.*"

The different articles of the Constitution, like those of the codes, must be so construed, if practicable, that all may be harmonious and equally enforced.

In confirmation of their theory that Article 234 has exclusive reference to municipal and other political corporations, defendants and intervenors' counsel refer us to Act 110 of 1880, which makes special provision for *altering, changing* and *amending* the *charters*

40

of towns and cities in the State, the city of New Orleans excepted. But, giving to that statute the greatest latitude and significance, it does not touch the question under discussion.

Act 76 of 1874 purports to amend two sections of the Revised Statutes; and plaintiffs' contention is that this amendatory enactment, in terms, *repeals* the provisions of the several statutory charters of the city of Monroe, in so far as they purport to confer upon that municipality *exclusive* power and authority over the *sale* and *prohibition* of the sale of intoxicating liquors within its limits. But it is not contended that it is, in fact or in effect, *an amendment of the charter* of the city of Monroe. *Just the contrary;* that it is a *general* law amendatory of two sections of the Revised Statutes, containing provisions which have the effect of *repealing* the conflicting provisions of the charter of the city of Monroe.

The sense of Act 110 of 1880 is that the charter of a town or city may be changed or amended by and through the instrumentality of an election.

It is not predicated upon Art. 234 of the Constitution, and does not make any reference to it.

It is perfectly immaterial what construction is put upon it, because Act 76 of 1884 is a later enactment, and just as capable of repealing the statute of 1880 as those of 1871, 1873 and 1876.

Another contention of the defendants is, that while not denying that under the police power of the State, which can not be abridged, the Legislature would have the power and right to strike from the general license law the retailers of intoxicating liquors, and that a statute to that effect would reach and control every municipality in the State," they still insist " that so long as the said general license law exists as it is  *  *  *  the Legislature can pass *no* law, nor delegate such power so as to prevent the city of Monroe, under its charter, from issuing licenses to retail dealers and keepers of saloons as aforesaid."

It is difficult for us to appreciate this argument. The license law is a general statute, which is operative throughout the State; so is Act 76 of 1884.

When the latter is put in operation in any subdivision of the State, through the means of an election, *the former becomes inoperative in that locality, although remaining operative in other portions of the State.*

The suspension of the license law may be discontinued after the lapse of twelve months by the question being again submitted to the people, and the declaration of a different result.

The special contention of the intervenors is that the original charter and its several amendments created a special taxing district of the city of Monroe, and permitted it to have its own tax collector and assessor, who were authorized to assess and collect its own licenses, based on the State license law.

That property within the city was thereby exempted from the payment of parochial taxes, and its citizens were relieved from the payment of parish licenses. And their conclusion, drawn from that premise, is that the police jury of the parish of Ouachita was thereby deprived of all authority and control over the City Council of Monroe.

Their contention is further, that under its charter, and Secs. 1211 and 2778 of the Revised Statutes, the city of Monroe had the unquestionable right to determine for itself, whether intoxicating liquors should be sold within its corporate limits, wholly independent of the will of the police jury of the parish of Ouachita, and that the acts of 1871, 1873 and 1876, being special acts, apart from the general laws of the State, they can not be repealed by a general law of the State unless that intention clearly appears from the terms of the general act.

In support of that proposition counsel for intervenors cite quite a number of authorities.

On this subject Mr. Dillon says that it is a general principle that affirmative statutes of a general nature do not, by implication, repeal charters and special statutes enacted for the benefit of particular municipalities, unless this intent clearly appears from the act. The test is, whether the general and special statutes can stand together.  1 Dillon on Municipal Corp., Sec. 87.

Another author says: "General statutes without negative words will not repeal the particular provisions of a former one, unless the two are irreconcilably inconsistent." Sedgwick on Construction of Statutes, 97.

In Bond vs. Hiestand; 20 An. 140, our predecessors said: "The law of 1859 is a special statute confirming a part of the charter of the city of New Orleans, and can not be considered as repealed unless expressly or by conflicting legislation *in pari materiæ*.  *  *  *  A

particular law is not repealed by a general law unless they be so repugnant that *both can not stand together under any circumstances.*

"Prior, will not be repealed by subsequent laws, from the mere fact that they differ.

"A repeal will be implied, only when the last statute contains provisions irreconcilable with those of prior laws. A repeal by implication is not favored by law."

That principle of statutory construction has been often repeated in in more recent decisions, and notably in State vs. Labatut, 39 An. 514.

Then counsel for the intervenors formulate the following argument, viz. :

"The construction given the Act 76 of 1884 by the plaintiffs' counsel is completely destructive of the autonomy of the municipality of the city of Monroe, and the logical sequence of his argument is, that by apparently inconsistent terms of a general law passed by the Legislature for the State at large, every vestige of power previously conferred by the special legislative charter of the city of Monroe may be repealed by implication, and in like manner conferred upon the police jury of the parish of Ouachita. If his contention be the true interpretation, such a consummation is not difficult to imagine. By the same logical process, were the Legislature to enact general laws applicable to the State at large, to provide a revenue for the State and all parishes, towns and cities therein, such an act or acts by implication would of necessity repeal the provisions of the charter of the city of Monroe, which specially exempt all the property within its corporate limits from the payment of any taxes to the parish of Ouachita, and all persons, firms and corporations doing business therein from the payment of any license tax to said parish. And with equal force the same may be said of the powers of the municipal authorities to provide, regulate and control the police of said city, maintain order, provide for the public health, the education of its youth, and, in short, divest it of all the powers with which it has been specially delegated, embodying the principles of local self-government and the direction and control of its own domestic concerns."

We do not consider that the logical sequence of the argument of plaintiffs' counsel is that Act 76 of 1884, as we have construed its provisions, "is completely destructive of the autonomy of the city

of Monroe," nor that " every vestige of power and authority previously conferred " on the city has been taken away and conferred upon the police jury.

We have only to recall the language of the *proviso* of the Act of 1884 to clearly demonstrate the error of the foregoing supposition. It is as follows: " If the majority of votes cast in a *parish*, if an election has been held for a *whole parish*, shall be against granting licenses for the sale of intoxicating liquors, *said vote or decision shall govern and control the action of any ward, incorporated town or city within the limits of said ward or parish, as the case may be, as fully and completely as if said election had been held by the authority of said town or city.*"

Under the terms of the Revised Statutes, the parochial election did not dominate the sale of spirituous liquors within a town or city within its limits; but the purpose of the *proviso* of 1884 was to make it govern and control the action of any ward, city or town within the parish.

The statute made no other alteration in the autonomy of the city of Monroe. In all other respects the situation prior to its passage remained unchanged.

This repealing statute did not deprive the city of Monroe of any of her charter powers or rights. It placed upon a parochial election the statutory interpretation, that a majority of the voters of the parish of Ouachita could stop the sale of spirituous liquors throughout its domain. The city of Monroe will be deprived of the revenues derived from retail liquor licenses, but of no other.

Taking a comprehensive view of the question, it seems to us quite apparent that it comes clearly within the scope of legislative power, unrestrained by any provision of the Constitution, and is quite beyond judicial control. That there is a direct and evident conflict between the provisions of the city charter and the Act of 1884 is full proof that the two are " irreconcilably inconsistent," and so repugnant that both can not stand together under any circumstances;" and hence the former are repealed by the latter.

This case does not, in our conception, involve in any manner the liberties or immunities of citizens. It only involves the constitutional power of the Legislature to declare that the vote or decision of the *people of a parish* shall control the sale of spirituous liquors in a *town* within its limits.

And, substantially, the only reason assigned why it has not that power is, that by prior statutes the town was, for all political purposes, made free and independent of the parish in that respect.

Recognizing the right of the people to govern and control the sale of intoxicating liquors within any given subdivision of the State, we can see no legal reason for hampering or restraining that right. The General Assembly is the sole and exclusive judge of the *time* and *manner* in which the police power of the State shall be exerted, and its action must be liberally construed. Stone vs. Mississippi, 101 U. S. 814; Boston Beer Co. vs. Massachusetts, 97 U. S. 25; Slaughterhouse cases, 16 Wallace, 36; Pickles vs. Dry Dock Co., 38 An. 412; Kidd vs. Pearson, 128 U. S. 1; Metropolitan Board vs. Barrie, 34 N. Y. 662.

The case of Ginnochio vs. State, 18 S. W. Rep. 82, is also applicable. Our conclusion is, that the law as well as the decision of the lower court is in favor of the plaintiffs.

Judgment affirmed.