CITY OF BARNESVILLE *et al. v.* MEANS, ordinary.

1. The act of August 1, 1906 (Acts of 1906, p. 114), to provide for local-option elections in counties in this State in which the sale of whisky is not lawful except through dispensaries; to determine the question of whether the sale of intoxicating liquors through dispensaries shall be prohibited in such counties; to determine the status of the county in respect to the sale of intoxicating liquors after said election has been held; and to provide a mode of changing the same; and for other purposes, is not unconstitutional for the reason that it contains two subject-matters, nor for the reason that it contains matter in the body of the act which is not referred to in the title thereof.

2. The act of 1887 (Acts of 1887, p. 57), amending the local act of 1883 (Acts of 1883, p. 586), providing for a submission to the qualified voters of Pike county of the question as to whether the sale of liquor should be prohibited in the county, was not invalid for the reason that it was passed after the enactment of the general local-option liquor law, and provided for an election in substantially the same manner as prescribed in that law. The act of 1883, not being affected by the passage of the general local-option liquor law, was subject to repeal, either in whole or in part, by the General Assembly, after the passage of the general law, and the question of repeal could be submitted to the qualified voters of the county; and such was the legal effect of the provisions of the act of 1887.

3. When in a given case a valid local law prohibits the sale of liquor in the incorporated towns of the county, and such sale is unlawful without the limits of such towns, under the operation of the general law of the State prohibiting the sale of liquor within three miles of any church or schoolhouse, and the sale of liquor is allowed in the county, in a dispensary located within one of the towns of the county, such county is within the operation of the act of August 1, 1906 (Acts of 1906, p. 114), providing for an election to determine whether the sale of intoxicating liquors through dispensaries shall be prohibited "in the counties of this State where the sale of intoxicating liquors is unlawful except in dispensaries."

4. The act of 1906, referred to in the preceding note, is applicable in any county where the sale of liquor is unlawful except in dispensaries, though such dispensary is located in an incorporated municipality and operated alone for the benefit of the municipality; the county having no interest whatever therein.

Argued December 3, 1906.—Decided April 17, 1907.

Petition for injunction. Before Judge Reagan. Pike superior court. October 8, 1906.

*W. W. Lambdin, E. A. Stephens, J. H. Hall,* and *Warren Roberts,* for plaintiffs.

*C. J. Lester, J. M. Smith,* and *O. T. Lester,* for defendant.

COBB, P. J. This was a petition by the City of Barnesville and the dispensary commission of Barnesville and certain individuals, against the ordinary of Pike county, praying that the latter be enjoined from calling and ordering an election under the provisions of the act of August 1, 1906 (Acts of 1906, p. 114), providing for local-option elections in counties in this State in which the sale of whisky is not lawful except through dispensaries. After the hearing the judge refused to grant the injunction as prayed for, and the plaintiffs excepted.

1. The case as presented in the bill of exceptions raises the question as to the constitutionality of the act above referred to, and also the question as to whether, if that act is constitutional, it is applicable to Pike county. In the determination of the latter question the constitutionality of certain local acts is also involved. The different questions arising out of the different assignments of error in the record will now be dealt with. We will first consider the attack made upon the act under which it is sought to hold the election. It is said that this act is unconstitutional because it refers to more than one subject-matter and contains matter different from what is expressed in the title thereof, in that the act undertakes to deal with the question of local-option elections for the purpose of preventing the sale of intoxicating liquors by private persons, this matter having been already dealt with in the general local-option liquor law as contained in the Political Code, §1541 et seq., and at the same time deals with the abolition of dispensaries and the sale of liquor through dispensaries; such being two separate and distinct subject-matters, and both of them not being re-

ferred to in the title. Does the act referred to contain two subject-matters within the meaning of the constitution?

The act, upon its face, declares that it is applicable only in counties where the sale of intoxicating liquors is unlawful except in dispensaries, and then provides for an election to be held "to determine whether or not the sale of liquor shall be absolutely prohibited in such counties." The election is to be held under the provisions of the Political Code relating to elections under the general local-option liquor law, so far as applicable. It is provided that if a majority of the votes cast at the election shall be against the dispensary, intoxicating liquors shall not be sold in the county, either by private individuals or in dispensaries, except that licensed druggists may sell or furnish pure alcohol for medical, scientific, and mechanical purposes. It is also provided that when an election is held under this act, no other local-option election shall be held in less than four years thereafter, and then only upon a new petition, conforming to the provisions of the act. If after the expiration of that time another election is held, and the result of the election is in favor of the dispensary, "then the laws regulating the sale of intoxicating liquors in dispensaries in said counties, which were in existence at the date when the operation was suspended by virtue of the voters of said county having voted against the dispensary, shall be restored to force and effect." The act under consideration does not provide for the repeal of the law establishing the dispensary, but merely for the suspension of its operation during the dates between the election resulting against the dispensary and one resulting in favor of the dispensary. After an election of the character last referred to, the original law providing for the establishment of the dispensary comes into operation again, without any new legislation on the subject. The subject-matter of the act, therefore, is the suspension of the operation of a dispensary law in any county where a dispensary has been established. The passage of a law dealing with this subject was within the power of the General Assembly, and any matter of legislation which was germane and pertinent to this subject-matter could be embraced in the act without making it amenable to the objection that it contained two subject-matters. The status of a county during the time that the operation of the dispensary was suspended was a matter germane and pertinent to the general subject-matter

of the suspension of its operation. It was therefore competent for the General Assembly to provide that if, as the result of an election, the operation of a dispensary was suspended, intoxicating liquors should not be sold until there had been another election resulting in favor of the dispensary; and this provision might be made applicable not only to sales in a dispensary, but also to sales by private persons or corporations. The act was, therefore, not subject to the objection made that it contained two subject-matters.

Nor was it subject to the objection that there was matter in the body of the act not referred to in the title thereof; for the title distinctly declares that it is an act to provide for local-option elections in counties in which the sale of liquor is not lawful except through dispensaries, to determine the question of whether the sale of intoxicating liquors through dispensaries shall be prohibited in such counties, to determine the status of the county in respect to the sale of intoxicating liquor after the election has been held, and to provide a mode for changing the same, and for other purposes.

2. It is contended that the act of 1906 above referred to is not applicable to Pike county, for the reason that Pike county does not come within the descriptive terms of the act, which declares that it shall be operative in counties where the sale of intoxicating liquors "is unlawful except in dispensaries." While there is a dispensary in existence in the city of Barnesville, which is in the county of Pike, established under the act of December 18, 1900 (Acts of 1900, p. 214), it is said that the sale of intoxicating liquors is nevertheless lawful in Pike county, although as a matter of fact no one is engaged in the sale at this time; that is, there is no law prohibiting the sale, and no legal obstacle to the issuance of a license, though none has been issued. It therefore becomes necessary to determine the status of Pike county in reference to the laws in relation to the sale of liquor; and to do this, reference must be had to certain local acts on the subject. In 1883 an act was passed which authorized the submission to the voters of Pike county of the question of whether the sale of liquor should be allowed in the county (Acts of 1882-3, p. 586). An election was held under the provisions of this act, in July, 1884, and the result of the election was against the sale. This local act was in force when the general local option law was passed; and by the terms of

that act, local laws then in existence prohibiting the sale of liquor were not repealed or otherwise affected (Political Code, §1550).

In 1887 an act was passed amending the local act of 1883 (Acts of 1887, p. 857). This act provided that an election might be held in Pike county to determine the question of whether the sale of liquor should be prohibited. The method of election is fully provided for in the act. The provisions of the act, relating to the election, are substantially the same as those contained in the general local-option law, as now set forth in the Political Code, §1541 et seq. The language of the local act and the general law is, except in a few minor particulars, identical. There is no substantial difference between the two in regard to the manner of calling the election, or conducting it, or of contesting the result. The effect produced in the event that the result of the election was in favor of the sale is different in the local act from what it would have been if the election had been held under the general law. By the seventh section of the act of 1887 it is provided that if the election "shall result in the repeal of the prohibition law" then of force in the county, no sale of liquor shall be authorized without a license being obtained from the ordinary, authorizing the sale upon the terms and conditions referred to in the act. This section contains a proviso that the provisions of the act, as to the manner of obtaining a license, shall not be construed to apply to any incorporated town in the county. An election was held under this act which resulted in favor of the sale. In *Beckham* v. *Howard,* 83 *Ga.* 89, it was held that the effect of this election was to authorize a license for the sale of liquor in the county at points not embraced in any of the incorporated towns in the county, but that under the proviso above referred to, the towns were "absolutely and unconditionally dry." The General Assembly undoubtedly had power to provide for the unconditional repeal of the act of 1883 in its entirety. It had authority to repeal it in part and to allow it to remain in force in part. It could make a repeal of either character subject to a vote of the people of the county. The effect of the act of 1887 was to submit to the people of the county the question as to whether the act should be repealed so far as it related to the sale of liquor in places outside of the incorporated towns, and remain of force so far as such towns were concerned. The legislature has authority to submit a question of a partial repeal of an act to the voters of .

the county, and an act providing for such an election would not be invalid merely for the reason that the manner of holding the election was identical with that prescribed in the general local-option liquor law.

3. The act of 1906 is applicable only to those counties where the sale of liquor "is unlawful except in dispensaries." It is not necessary that liquor should be actually sold in a county in order to take it without the operation of this act. The question to be determined as to the applicability of the act is whether, under existing law, the sale "is unlawful except in dispensaries." There is a dispensary in Barnesville. The sale of liquor by private individuals is unlawful in all the incorporated towns in Pike county. The only place, so far as incorporated towns is concerned, where liquor can be lawfully sold, is in the Barnesville dispensary. The effect of the election under the local act of 1887 was to render the sale of liquor lawful in any place in the county other than the incorporated towns. Therefore, if there is no other law rendering the sale unlawful, the county of Pike would not be within the operation of the act of 1906. But there is a general law in this State which declares it to be unlawful to sell liquor in any quantity within three miles of any church or schoolhouse, public or private. Penal Code, §434. There is evidence in the record that there is not a single spot in the territory of Pike county which is not within three miles of a church or schoolhouse. So long as the present condition of affairs continues, the sale of liquor is unlawful in every portion of Pike county without the limits of incorporated towns, under the operation of this law, known as the three-mile law, and the sale of liquor is unlawful in every incorporated town as the result of the provisions of the act of 1887. At the time when the petition for an election was filed the sale of intoxicating liquors was unlawful in every portion of Pike county except in the Barnesville dispensary. The case, therefore, falls within the very letter of the act of 1906.

But it is said that the three-mile law is of such character that it may be in operation one day and not operative the next; that a school may be abolished, or a church or schoolhouse may be burned or destroyed, and the sale of liquor, therefore, would be lawful in territory contiguous to the place where the church or school was formerly located. These contingencies may happen, but each case

must be dealt with according to the facts as they exist at the time that the petition for the election is filed. If at that time the county is within the terms of the act, an election is authorized. If it is not within the terms of the act, an election is not authorized. It is said, though, that the three-mile law is not a law applied simply to counties, that it is a State law and is operative over territory irrespective of county lines. This is all true, but when operative, and territorially operative, so as to embrace the entire county, then the sale of liquor in that county is as much rendered unlawful as it would be so rendered by a local law applicable alone to the territory of the county. The test prescribed by the act of 1906 is this: Is a sale of intoxicating liquors in a given county "unlawful except in dispensaries?" To determine whether or not it is unlawful, reference must be had to the general laws of the State and the valid local laws applicable to the particular case. If, under the operation of any law of the State, general or local, at the time the petition is filed, the sale of intoxicating liquors is "unlawful except in dispensaries," the county falls within the provisions of the act of 1906.

But it may be said that the General Assembly has provided that the three-mile law shall not be applicable in certain cases. This is true. Exceptions to this act are set forth in section 435 of the Penal Code, which is as follows: "The preceding section does not apply to an incorporated town or city, nor to the sale of such liquors in original packages of not less than forty gallons, by the manufacturer thereof to legally authorized dealers; nor does it prohibit the sale of domestic wines; nor does it prohibit regular practicing physicians from dispensing alcoholic stimulants for medical uses in their practice." Does the fact that the General Assembly makes an exception in a law, which either in terms or in effect declares a certain act to be unlawful, make such law any less a law declaring such act to be unlawful? The word "unlawful," in the act of 1906, must be interpreted in the light of the legislation of this State where the word or its equivalent is used. Many transactions are denounced by the law as unlawful, and then, by way of exception, the General Assembly provides that if the transaction takes place under certain circumstances, the party shall be relieved from the penalties of the law. The law declares, in effect, that it shall be unlawful to point a pistol or a gun at another,

whether loaded or unloaded, and then, by way of exception, says that persons engaged in a sham battle by the military, and under other named circumstances, shall not be liable to the penalties of the act.   Does this exception make the pointing of a gun or pistol at another a less unlawful act because certain persons, under given circumstances, are relieved from the penalties imposed by the law? It is unlawful to stab another, and still the General Assembly has provided that under certain circumstances the person may be relieved from the penalties imposed for the offense of stabbing, as where the stabbing is done in one's own defense, or under other circumstances of justification.   In interpreting legislative acts to find what the General Assembly has denounced as unlawful, we look to the general provisions of the law; and if a given act is declared to be unlawful, it is not the less an unlawful act even though the General Assembly in its wisdom, for sufficient reason, may declare that certain persons shall not be held amenable to the penalties of the law.

What did the General Assembly mean, in the act of 1906, when they declared that the act should apply to counties in which "the sale of liquor is unlawful except in dispensaries."   The legislative intent was evidently to embrace those counties in which, under the operation of some valid law of this State, the sale of liquor was declared to be unlawful, without reference to whether, under any of such laws, there might be an exception inuring to the benefit of a certain class enumerated by the General Assembly in an excepting clause.   If this interpretation is not placed upon the act of 1906, the General Assembly have probably done an idle and vain thing. The general local-option liquor law, which declares the sale of liquor in a county in which an election has been held resulting against the sale shall be unlawful, has more than one exception having the effect to relieve persons making a sale of liquors from the penalties of the act.   That act excepts the sale of domestic wines, and the sale of all wines for sacramental purposes, and also excepts the sale of pure alcohol when it is to be used for certain purposes. Political Code, § 1549.   If the effect of the exceptions to the three-mile law is to prevent a county, the territory of which is entirely within the operation of that law, from coming within the operation of the act of 1906, then, for the same reason, any county within the operation of the general local-option liquor law, where an elec-

tion has been held resulting against the sale, would also be without the operation of the act of 1906. Without reference to the question as to whether all domestic wines are intoxicating liquors, the general local-option liquor law makes an exception of all wines and of pure alcohol when sold for certain purposes. Pure alcohol is certainly an intoxicating liquor; that is, the courts could take judicial notice of the fact that it is intoxicating. It is true that the sales of liquor within the exceptions of this act are lawful sales, but the fact that there is an exception authorizing a lawful sale in given instances does not render a county in which the law is operative any less a county in which the sale of liquor is unlawful within the meaning of the different statutes of this State on the subject. There are numerous local laws declaring the sale of liquor in different counties unlawful. In probably all of these laws there is an exception in favor of the sale of certain classes of wines or liquors. There is probably no local law in which the sale of liquor is denounced as unlawful with no exception whatever made as to the operation of the act. Such being the case, we can not attribute to the General Assembly the intention of such an absurd proceeding as to pass an act which probably would not have operation in a single county in the State. The descriptive words of the act as to the county in which an election is to be held must be construed in the light of the condition of affairs under existing legislation; and when so construed, the act is applicable in any county where there is a general law or a valid local law which, either in terms or in effect, denounces the sale of liquor as unlawful, even though there may be in the act a subsequent clause which provides that sales of a given character shall not be within the operation of the act.

4. It is said, though, that the act of 1900 (Acts of 1900, p. 214), as amended by the act of 1901 (Acts of 1901, p. 333), providing for the establishment of the dispensary in the city of Barnesville, made the dispensary strictly a city institution, without any connection, in any way, with the county of Pike, and that therefore the case does not fall within the act of 1906, as the purpose of that act was to provide for an election on the question of suspending the operation of dispensaries in counties where the dispensaries were operated either under county control or for the benefit of the county, in whole or in part. The act of 1906 uses the word "dispensaries," and therefore it is to be determined what is a dis-

pensary within the meaning of the law of this State. A dispensary, in this State, is a place where liquor is sold directly under governmental authority and by government officers, such officers either being officers of the State or of a given county, or of a given municipality. In some places the officers in charge of the dispensary are officers of the county; in other places they are officers of the municipality. In some the managers of the dispensary are selected by the county authorities, and in others by the municipal authorities. In some instances the profits of the dispensary flow into the county treasury, and in other cases into the city treasury, and in some instances the profits are divided between the municipality in which the dispensary is located and the county in which the municipality is situated.

It was not intended, by the use of the word "dispensary," in the act of 1906, to make a class out of any of these various forms of a dispensary that are found under the different laws providing for the establishment of such institutions. The General Assembly evidently intended, by the use of the word "dispensary," to describe a place where liquor is sold by governmental authority, without reference to whether the officers in charge were officers of the State, county, or municipality, or how the profits of the dispensary were to be divided. The legislative intention was to enable the people of the county, where any one of the different forms of a dispensary appeared, to express their preferences as to whether the dispensary should continue in that county or whether it should be suspended. It was the evil effects resulting from the sale of liquor by the dispensaries that brought about the legislation authorizing the people to suspend its operation by a popular vote. No matter who controls the dispensary, or how its profits are divided, the evil effects resulting from the sale of liquor therein are the same, and the people are entitled, under the act of 1906, to determine whether the dispensary system in the county shall be continued or whether it shall be changed for the time being to a system in which the sale of liquor is altogether prohibited.

We see no reason for reversing the judgment refusing to restrain the ordinary from calling an election under the act of 1906.

*Judgment affirmed. Fish, C. J., absent. The other Justices concur.*