[Crim. No. 1723. In Bank.—May 27, 1912.]

## Ex Parte C. A. BECK, on Habeas Corpus.

CONSTITUTIONAL LAW—DELEGATION OF POWER TO MAKE LAWS—CONDITIONAL STATUTE—APPROVAL BY ELECTORS OF SPECIAL LOCALITY.—The power to make laws conferred by the constitution on the legislature cannot be delegated by the legislature to the people of the state or to any portion of the people. This rule, however, does not prohibit a conditional statute, the taking effect of which is made to depend upon such a subsequent event as its approval by the electors of the locality specially interested.

ID.—REGULATING SALE OF LIQUORS—APPROVAL BY ELECTORS OF SPECIAL DISTRICT.—A law relating to the retailing of intoxicating liquors relates to such a subject that its taking effect in any particular locality of the state may be made to depend upon a favorable vote of the electors, without involving a forbidden delegation of legislative power.

ID.—LOCAL OPTION LAW IS CONSTITUTIONAL—ACT NOT UNREASONABLE OR DELEGATION OF LEGISLATIVE POWER.—The so-called "Local Option Act" of April 4, 1911, (Stats. 1911, p. 599), which in effect prohibits the sale, etc., of alcoholic liquor in any incorporated city or town of the state, or the portion of any supervisorial district not included within the boundaries of any such city or town, in which at least twenty-five per cent of the electors petition for an election on the question, unless a majority of the electors voting on the question declare themselves in favor of such sale, etc., was enacted by the legislature in the exercise of its police powers, and is not invalid either on the ground of unreasonableness or on the ground that it involves the delegation of its power by the legislature.

ID.—LIMITS OF LOCAL OPTION DISTRICTS—LEGISLATURE MIGHT PRESCRIBE.—As that act involves no delegation of legislative power, and authorizes no exercise of legislative power or any power of local government by the districts specified, it follows that the legislature had the power to prescribe the limits of territory within which the electors might avail themselves of the prohibitions of the act, and could make a supervisorial district such a unit.

ID.—ACT IS A GENERAL LAW — OPERATION IN CITIES HAVING FREEHOLDERS' CHARTERS.—The act is a general law, applicable everywhere in the state, except possibly in cities having freeholders' charters. If not applicable in such cities, that fact would not impair the character of the law as a general law.

ID.—POLICE POWER OF COUNTIES, CITIES, AND TOWNS—LOCAL REGULATIONS SUBJECT TO GENERAL LAWS.—So far as any authority of counties, cities, and towns in the matter of the regulation of the sale or distribution of alcoholic liquors is based on the provisions

of the constitutional grant (Const., art. XI, sec. 11), to make and enforce "local, police, and sanitary regulations," it is subject at all times to general laws, and such local regulations must give way to such general laws so far as they are in conflict therewith.

Id.—Vote of Electors Does Not Suspend General Laws Authorizing Licenses of Liquor Traffic.—It is the act itself, and not the vote of the electors, that suspends the provisions of other general laws, such as, in the case of cities and towns organized under the general Municipal Corporation Act, provisions authorizing the licensing of the traffic in alcoholic liquors for purposes of revenue and regulation, and in the case of portions of supervisor districts outside of cities and towns, provisions of the County Government Act of the same character.

Id.—Law Is Uniform in Operation.—The law is uniform in its operation, and applicable to all parts of the state as to which the legislature has the authority to legislate on the subject, notwithstanding the traffic in intoxicating liquors in each district may be forbidden or not forbidden as the electors may indicate their desire.

Id.—Requirement for Majority Vote to Legalize Liquor Traffic.—It was purely a question of policy for the legislature to determine on what conditions and under what circumstances such traffic should be allowed, and the requirement that a majority of the votes cast at the election must be in favor of the traffic in order to authorize it is no legal objection to the validity of the act.

Id.—Suspension of Police Power of Counties, Cities, and Towns.—There is in the act no forbidden suspension of the police power granted by the constitution to counties, cities, and towns.

APPLICATION for a Writ of Habeas Corpus to be discharged from an arrest for an alleged violation of the Local Option Law.

The facts are stated in the opinion of the court.

Carlton W. Greene, and Herbert Choynski, for Petitioners.

Charles Palmer, J. W. Joos, and J. E. White, *Amicus Curiæ*, for Respondent.

ANGELLOTTI, J.—The petitioner is held in custody for examination under a complaint charging him with keeping and conducting a retail liquor saloon in the city of Paso Robles, where alcoholic liquors are sold, served, and distributed in quantities of less than two gallons, said city being an incorporated city and "no-license territory," and he not being a licensed pharmacist.

The question presented by this proceeding is the constitutionality of an act of the legislature generally known as the "Local Option Act," approved April 4, 1911 (Stats. 1911, p. 599), with reference specially to cities and towns organized and existing under the general Municipal Corporation Act, of which the city of Paso Robles is one. It is not questioned that an election has been regularly held in such city in the manner provided by such act, that a majority of four votes was given at such election in favor of "no license," and that the complaint states a public offense if such act is a valid exercise of legislative power.

Substantially the act provides as follows in respect to all matters material here: Qualified electors of any incorporated city or town, or of that portion of any supervisorial district not included within the boundaries of any such city or town, numbering not less than twenty-five per cent of the number of votes cast for all candidates for governor in such territory at the last preceding election for that office, may petition the proper legislative authority, in the one case the city council or other similar body of the city or town, in the other the board of supervisors of the county, for an election on the question whether the sale of alcoholic liquors shall be licensed in such territory. Upon the certification of the petition by the proper officer as sufficient, such legislative body shall submit the question to the electors, either at a general state or municipal election within said territory, or at a special election, dependent upon the time after such certification within which such a general election is to be held within such territory, "provided, that no election under this act shall be held within two years of any previous election held under this act within the same territory." Any such special election is to be called and held in accordance with all the provisions of law respectively applicable to general state elections and municipal elections. according as it is within territory outside of or within an incorporated city or town. "Unless a majority of the votes cast on this question at such election are in favor of license, the territory described in the petition shall be no-license territory on and after ninety days from the date of said election," and "shall remain such until at a subsequent election, called, as herein provided, to vote on the question of whether the sale of alcoholic liquors shall be licensed therein, a majority

of the votes cast on that question are in favor of license. It shall thereupon cease to be no-license territory within the meaning of this act." No license to sell or distribute alcoholic liquors in no-license territory shall be issued except to registered pharmacists and manufacturers of said liquors, and all such existing licenses, with the exceptions above stated, shall immediately become void when the territory becomes no-license territory, all holders of such licenses being entitled to a rebate of the proportion of the license fee paid for the unexpired term thereof. It is declared to be unlawful for any persons, etc., "within the boundaries of any no-license territory," to sell, furnish, distribute, or give away any alcoholic liquor, to keep, conduct, or establish, as principal or agent, any place where alcoholic liquors are sold, served, or distributed, or are kept for any of such purposes, or to solicit orders, take orders, or make agreements for the sale or delivery of alcoholic liquors, except as provided in section 16 of the act which allows some of the prohibited acts under certain prescribed circumstances and for certain specified purposes. It is declared that any person violating any of the provisions of the act shall be deemed guilty of a misdemeanor, punishable in the first instance by a fine not exceeding six hundred dollars, or by imprisonment in the county jail not exceeding seven months. All places where alcoholic liquors are sold or distributed, or are kept for sale or distribution, in violation of any of the provisions of the act, are declared to be common nuisances and abatable as such. The term "alcoholic liquors" is declared to include spirituous, vinous, and malt liquors, and any other liquor or mixture which contains one per cent, by volume, or more, of alcohol, and which is not so mixed with other drugs as to prevent its use as a beverage.

The principal objection made to this act is that it is an attempted delegation by the legislature to the electors of its power to make laws, a delegation of its legislative power which is not warranted by our constitution. It is elementary, of course, as said in *Ex parte Wall*, 48 Cal. 279, 313 [17 Am. Rep. 425], that "the power to make laws conferred by the constitution on the legislature cannot be delegated by the legislature to the people of the state or to any portion of the people." And if the act before us must be considered as doing this it must be held void.

Reliance is naturally placed by petitioner for his claim that such is the nature of the act here involved upon the opinion of the court in *Ex parte Wall,* 48 Cal. 279, [17 Am. Rep. 425], where an act differing from this in no respect material to the determination of this particular question was held void upon this ground. It is to be observed, however, that there was then a general law of the state authorizing the selling, etc., of intoxicating liquors upon the payment of a license fee prescribed by the legislature, a system abolished by the constitution of 1879. While it was recognized by the opinion that a statute may be conditional and its taking effect sometimes be made to depend upon a subsequent event, it was squarely held that an approval by popular vote could not be an event having such effect. It was said that "the event must be one which shall produce such a change of circumstances as that the law-makers—in the exercise of their own judgment—can declare it to be wise and expedient that the law shall take effect when the event shall occur. . . . If it (the law) can be made to take effect on the occurrence of an event, the legislature must declare the law expedient if the event shall happen, but inexpedient if it shall not happen. They can appeal to no other man or men to judge for them in relation to its present or future propriety or necessity; they must exercise that power themselves, and thus perform the duty imposed by the constitution. But in case of a law to take effect, if it shall be approved by a popular vote, no event affecting the expediency of the law is expected to happen. The expediency or wisdom of the law, abstractly considered, does not depend upon a vote of the people. If it is unwise before the vote is taken, it is equally unwise afterward."

The opinion in *Ex parte Wall,* 48 Cal. 279, [17 Am. Rep. 425], was concurred in by but three justices, Justices Rhodes and Crockett dissenting. In its conclusion that such an act as was there and is here under consideration is void as an unwarranted delegation of legislative power, it is now opposed to the overwhelming weight of authority in other states, as we shall show hereafter. Subsequent decisions of this court have been such, we think, as to practically overrule it as an authority upon the question we are considering.

In *People* v. *Nally,* 49 Cal. 478, the legislative act under consideration was one providing for an election in Siskiyou

County on the question of the annexation to Siskiyou County of a portion of Klamath County, described in the act, and that if a majority voted for annexation statements of the result should be forwarded to the boards of supervisors of Klamath and Humboldt counties, and that thirty days thereafter the organization and government of Klamath County must be abandoned, and the described portion thereof annexed to Siskiyou County, and the remainder to Humboldt County. The election was held in Siskiyou County as ordered, and a majority of the votes were in favor of the annexation. The subsequent proceedings were as required by the act. Thereafter, Nally, the assessor of Klamath County, refused to prepare an assessment book for that county, claiming that it was no longer a county. The proceeding was in *mandamus* to compel him to prepare such a book. The writ was denied. The principal opinion in the case, that of Justice Crockett, concurred in by Justice Rhodes, declared that the act related to a matter of "purely local concern, in which the people of the district to be affected by it were alone concerned." *Ex parte Wall* was referred to as a case wherein the question was whether a statute authorizing a general law to be suspended in certain political subdivisions of the state, by a vote of the people of the district, was a delegation of legislative power, the basis of this statement probably being the fact that there was then a general law of the state providing for the licensing of the sale of intoxicating liquors and fixing the amount of license, which we have before referred to. The court said: "However the rule may be in that class of cases, it is settled, I think, by an overwhelming weight of authority in this and many other states, that in matters of purely local concern, it is competent for the legislature to enact that a statute affecting only a particular locality shall take effect only upon condition that it is approved by a vote of the majority of the people whom the legislature shall decide are those who are interested in the question." In *People* v. *McFadden*, 81 Cal. 489, [15 Am. St. Rep. 66, 22 Pac. 851], an act providing for the formation of a new county, upon the assent of two thirds of the qualified electors thereof voting at an election to be held for that purpose, was declared by the court in Bank to be constitutional and not a delegation of legislative authority. It is squarely held that as to such a question, the same being

primarily one of local concern, the subsequent event upon which the taking effect of the legislative act might be made to depend, could be a favorable vote of the electors primarily interested. 4 Cooley on Constitutional Limitations (p. 141, et seq.) was quoted approvingly as follows: "But it is not always essential that a legislative act should be a completed statute which must in any event take effect as a law, at the time it leaves the hands of the legislative department. A statute may be *conditional,* and its taking effect may be made to depend upon some subsequent event. Affirmative legislation may in some cases be adopted, of which the parties interested are at liberty to avail themselves or not, at their option." In holding that such event might, as to certain questions, be a favorable vote of the electors, the decision in *People* v. *McFadden,* 81 Cal. 489, [15 Am. St. Rep. 66, 22 Pac. 851], was squarely opposed to material portions of the majority opinion in *Ex parte Wall. Board of Law Library Trustees* v. *Board of Supervisors,* 99 Cal. 571, [34 Pac. 244], is still more in point. The act there involved was one providing for the establishment of county law libraries in the counties of the state, and it contained a proviso as follows: "And provided further that it shall be discretionary with the board of supervisors of any county to provide by ordinance for the application of the provisions of this act to such county" the court in Bank said: "We think the legislature had the power to provide in the act that counties might come within or remain without the provisions of the act, as the boards of supervisors of the respective counties might determine. It is not necessary to enter into a discussion of the constitutionality of this law in that regard, for in the recent case of *People* v. *McFadden,* 81 Cal. 489, [15 Am. St. Rep. 66, 22 Pac. 851], involving the constitutionality of the act creating the county of Orange, there is found an exhaustive discussion of the same principle, with the citation of many cases bearing upon the question." And finally, in *Wheeler* v. *Herbert,* 152 Cal. 224, 234, [92 Pac. 353], it was declared as follows: "That it is competent for the legislature to pass a law which shall be executed only in the event that a majority of a certain class of persons shall declare in favor of it is a principle too well settled to require discussion," citing *People* v. *McFadden,* 81 Cal. 489, [15 Am. St. Rep. 66, 22 Pac. 851], and other cases.

It thus appears that it is now settled in this state, as it is generally elsewhere, that the rule prohibiting the delegation of its legislative powers by a state legislature, does not necessarily prohibit a conditional statute, the taking effect of which may be made to depend upon such a subsequent event as its approval by the electors of the locality specially interested. (See Cooley on Constitutional Limitations, pp. 163 to 165, and 171, 172.) It is said on the pages last referred to: "It would seem, however, that if a legislative act is, by its terms, to take effect in any contingency, it is not unconstitutional to make the time when it shall take effect depend upon the event of a popular vote being for or against it—the time of its going into operation being postponed to a later day in the latter contingency. It would also seem that if the question of the acceptance or rejection of a municipal charter can be referred to the voters of the locality specially interested, it would be equally competent to refer to them the question whether a state law establishing a particular police regulation should be of force in such locality or not. Municipal charters refer most questions of local government, including police regulations, to the local authorities, on the supposition that they are better able to decide for themselves upon the needs, as well as the sentiments, of their constituents, than the legislature possibly can be, and are therefore more competent to judge what local regulations are important, and also how far the local sentiment will assist in their enforcement. The same reasons would apply in favor of permitting the people of the locality to accept or reject for themselves a particular police regulation, since this is only allowing them less extensive powers of local government than a municipal charter would confer, and the fact that the rule of law on that subject might be different in different localities, according as the people accepted or rejected the regulation, would not seem to affect the principle, when the same result is brought about by the different regulations which municipal corporations establish for themselves in the exercise of an undisputed authority." And on pages 173 and 174, while admitting that there have been some decisions to the contrary, the learned author says: "Such laws are known, in common parlance, as local option laws. They relate to subjects which, like the retailing of intoxicating drinks, or the running at large of cattle in the

highways, may be differently regarded in different localities, and they are sustained on what seems to us the impregnable ground, that the subject, though not embraced within the ordinary power of the municipalities to make by-laws and ordinances, is nevertheless within the class of police regulations, in respect to which it is proper that the local judgment should control."

On the question whether a law relating to the retailing of intoxicating liquors relates to such a subject that its taking effect in any particular locality of the state may be made to depend upon a favorable vote of the electors, without involving a forbidden delegation of legislative power, the decisions are practically unanimous. This is so declared in Joyce on Intoxicating Liquors, secs. 368 and 371. The following decisions sustain this view, viz.: *State* v. *Wilcox*, 42 Conn. 364, [19 Am. Rep. 536]; *McPherson* v. *State*, 174 Ind. 60, [31 L. R. A. (N. S.) 188, 90 N. E. 610]; *State* v. *Forkner*, 94 Iowa, 16, [28 L. R. A. 206, 62 N. W. 772]; *Stickrod* v. *Commonwealth*, 86 Ky. 285, 290, 5 S. W. 580]; *Fell* v. *State*, 42 Md. 71, [20 Am. Rep. 83]; *Commonwealth* v. *Bennett*, 108 Mass. 27; *State* v. *Pond*, 93 Mo. 606, 621, [6 S. W. 469]; *In re O'Brien*, 29 Mont. 530, [1 Ann. Cas. 373, 75 Pac. 196]; *Paul* v. *Gloucester Co.*, 50 N. J. L. 585, [1 L. R. A. 86, 15 Atl. 272]; *Gordon* v. *State*, 46 Ohio St. 607, [6 L. R. A. 749, 23 N. E. 63]; *Fouts* v. *City of Hood River*, 46 Or. 492, [7 Ann. Cas. 1160, 1 L. R. A. (N. S.) 483, 81 Pac. 370]; *Locke's Appeal*, 72 Pa. St. 491, [13 Am. Rep. 716]; *State* v. *Barber*, 19 S. Dak. 1, [101 N. W. 1078]; *State* v. *Scampini*, 77 Vt. 92, [59 Atl. 829]; *State* v. *Donovan*, 61 Wash. 209, [112 Pac. 260]. Without any discussion of this particular question, local option laws of a similar character were sustained in *Ladson* v. *State*, 56 Fla. 54, [47 So. 517]; *City of Barnesville* v. *Means*, 128 Ga. 197, [57 S. E. 422]; *Garrett* v. *Mayor*, 47 La. Ann. 618, [17 South. 238]; *Feek* v. *Township Board*. 82 Mich. 393, [10 L. R. A. 69, 47 N. W. 37]; *State* v. *Johnson*, 86 Minn. 121, [90 N. W. 161]; *Hoover* v. *Thomas*, 35 Tex. Civ. App. 535, [80 S. W. 859], and *Willis* v. *Kalmbach*, 109 Va. 475, [21 L. R. A. (N. S.) 1009, 64 S. E. 342]. There is now practically no state holding to the contrary with the possible exception of Tennessee (see *Wright* v. *Cunningham*, 115 Tenn. 445, [91 S. W. 293], a few earlier decisions in Pennsylvania,

Iowa, and Indiana having been practically overruled by later decisions, as above shown.

The act involved in this proceeding is practically one prohibiting the sale, etc., of alcoholic liquor in any incorporated city or town of the state, or the portion of any supervisorial district not included within the boundaries of any such city or town, in which at least twenty-five per cent of the electors petition for an election on the question, unless a majority of the electors voting on the question declare themselves in favor of such sale, etc. By it, the legislature practically determined that it is inexpedient to allow the sale of such liquor in any such territory when the sentiment of the inhabitants thereof, as shown by the expression of its electorate, is to so large an extent opposed thereto, and denounced the sale under such circumstances as a crime. ·In view of what we have said on the question of delegation of power and in view of the undoubted power of the state in the matter of the regulation of the traffic in intoxicating liquors, we are satisfied that the act before us, enacted by the legislature in the exercise of its police powers, cannot be held to be in excess of its authority either on the ground of unreasonableness or on the ground that it involves the delegation of its power by the legislature.

In the light of what we have said there is no force in the claim that the act is void as to supervisor districts because a supervisor district is not a political subdivision of the state having powers of local government like a city or town, and has no power to enact legislation. The act calls for no legislation on the part of the supervisor district, and the vote of the electors thereof does not make the law at all. The electors thereof perform no legislative function whatever. The act is wholly one of the state legislature, in force all over the state so far as the right of the people of the respective localities mentioned to avail themselves thereof is concerned, the only thing left to the electors of each such locality to determine being whether they will avail themselves of the prohibitions contained therein. This, as we have seen, involves no delegation by the legislature or exercise by the electors of legislative power, or the exercise of any power of local government by the districts specified. Under these circumstances, the determination as to what subdivision of the state should be defined as the unit is entirely for the legislature, which could pre-

scribe such subdivisions as it saw fit. It might have pre-
scribed election precincts, instead of supervisor districts, as
has been done in some states, and as was done by the board of
supervisors of Colusa County in the county ordinance con-
sidered in *Denton* v. *Vann*, 8 Cal. App. 677, [97 Pac. 675].
It might even have created new subdivisions of its own for all
the purposes of the act. It once being established that there is
no delegation of legislative power by the legislature, and that
the act authorizes no exercise of legislative power or any power
of local government by the districts specified, the result we
have stated as to the power of the legislature in the matter of
prescribing the unit, necessarily follows. What we have said
on this point is fully sustained by some of the authorities
already cited.

In view of what we have said, the other objections to the
act here involved do not require very extended notice.

We have seen that the act is clearly a general law, purport-
ing to be applicable everywhere in the state, and as a matter
of fact, applicable everywhere in the state except possibly in
cities having freeholders' charters. If not applicable in such
cities, a question we have not considered and on which we ex-
press no opinion, such result is due entirely to certain pro-
visions of our constitution making such charters paramount to
certain general laws. But such a result would not impair the
character of the law as a general law. It is certainly applicable
to all parts of the state as to which the legislature is empowered
to enact legislation relative to the sale or distribution of alco-
holic liquors, including all cities and towns not having free-
holders' charters.

The power granted to counties and to cities and towns by the
provisions of section 11 of article XI of the constitution, to
make and enforce "local, police, sanitary and other regula-
tions" is expressly limited by said section to such regulations
"as are not in conflict with general laws." So far, therefore,
as any authority of counties, cities, and towns in the matter of
such regulations is based on the provisions of this constitu-
tional grant, it is subject at all times to such general laws, and
such local regulations must give way to such general laws so
far as they are in conflict therewith.

It is claimed that the act gives the electors of the specified
districts the power to suspend provisions of general laws of

the state, such as, in the case of cities and towns organized and existing under the general Municipal Corporation Act, provisions authorizing the licensing of the traffic in alcoholic liquors for purposes of revenue and regulation, and in the case of portions of supervisor districts outside of cities and towns, provisions of the County Government Act of the same character. This claim rests on the same basis as that of there being a delegation by the legislature of its legislative power.

As we have shown, there is no delegation of legislative power to the electors. It is the act enacted by the state legislature that suspends the provisions referred to, and not the vote of the electors. As we have seen, the legislature has simply enacted a law applicable to the whole state, which in substance and effect prohibits the sale or distribution of alcoholic liquor in any of the districts created by the act where, twenty-five per cent of the electors insisting on an official expression of opinion thereon, a majority of the electors are not in favor of such traffic. The act constitutes a declaration by the state legislature that such traffic is inexpedient in any such district where such a large proportion of the people are opposed thereto, and denounces such traffic under such circumstances as a crime.

There is nothing in the point that by virtue of the law a different rule may prevail in one locality than prevails in another, in regard to the traffic in intoxicating liquors. As to all parts of the state as to which the legislature has the authority to legislate on this subject, the law is uniform in its operation, the traffic in each district being forbidden or not forbidden as the electors may indicate their desire in the matter. Even as to permissible delegation of power to municipalities or counties "a constitutional provision that 'the legislature shall not pass private, local or special laws regulating the internal affairs of towns and counties' is not intended to secure uniformity in the exercise of delegated police powers but to forbid the passage of a law vesting in one town or county a power of local government not granted to another." (Joyce on Intoxicating Liquors, sec. 370.) And as a matter of fact, we know that there are almost as many differences in the regulations relating to the traffic in intoxicating liquors adopted by different cities and towns of the state, as there are cities and towns, running from the imposition of a very small

license fee in some cases to absolute prohibition of the traffic in others.

That a *majority* of the votes cast must be in favor of the traffic in order to authorize the traffic is no legal objection to the validity of the act. It was purely a question of policy for the legislature to determine on what conditions and under what circumstances such traffic shall be allowed at all. They concluded that it should not be allowed in any district where, under the circumstances stated, a majority of the electors expressing their opinion on the question should not express themselves in favor of such allowance. Undoubtedly, as learned counsel for petitioner suggest, if they can legally do this, they could have gone further, and prohibited such sale or distribution in any district unless much more than a mere majority of such electors expressed themselves in favor thereof. The difficulty with petitioner's claim in this regard is the same as in reference to the other points we have discussed. It is based on the theory that it is the people of the respective districts or the districts themselves that are exercising legislative power, which, as we have seen, is not well founded.

There is in the act no forbiden suspension of the police power granted by the constitution to counties, cities, and towns. As we have seen, this grant is expressly declared by the constitution to be subject to general laws of the state. And, of course, there is no violation of the general rule to the effect that the police power "is a continuous one, reposed somewhere, and one that cannot be barred or suspended by contract or irrepealable law." (See *In re Pfahler*, 150 Cal. 84, 85, [11 Ann. Cas. 911, 11 L. R. A. (N. S.) 1092, 88 Pac. 276].)

There is no other point made that, to our minds, requires notice here. We are satisfied that the act here involved cannot properly be held violative of any provision of our constitution that has been called to our attention, and we see no reason to doubt its validity. This being so, we are bound to uphold it as a valid enactment of the state legislature.

The writ is discharged and the petitioner remanded to custody.

Shaw, J., Henshaw, J., Lorigan, J., Melvin, J., and Sloss, J., concurred.