### Ex Parte MEYER.

### S. F. No. 57; June 27, 1895.

#### 40 Pac. 953.

**Perjury—Evidence.**—On an Examination for Perjury it appeared that defendant, on his voir dire as trial juror, stated, when asked if he knew the proprietor of a certain gambling place, that he had nothing to do with "such places"; that at the place referred to gambling prohibited by statute was carried on; that defendant visited places where gambling not prohibited by statute was carried on. Held, that he was not guilty of perjury.

Julius Meyer was arrested for perjury, and makes application for a writ of habeas corpus. Allowed.

Andrew J. Clunie for petitioner; Edgar D. Peixotto for respondent.

BEATTY, C. J.—The petitioner has been held to answer on a charge of perjury, and asks to be discharged, upon the ground, among others, that he was committed without reasonable or probable cause. The evidence adduced before the committing magistrate is, in my opinion, wholly insufficient to sustain the charge as laid in the information, or any charge. It seems that one Paulsell was on trial in the superior court on a charge of robbing the proprietors of a faro bank. The petitioner, being a member of the regular panel of trial jurors in attendance upon that department of the superior court, was called into the jury-box and examined on his voir dire touching his qualifications as a juror. He was questioned by the prosecution, and passed. Counsel for defendant then asked him the following question, among others: "Do you know a man named Carrall, or Ross, or Webber, the men who were proprietors of the gambling house at 620 Market street?" To which he answered: "No, sir; I have nothing to do with such places." The charge is that the latter part of this answer was false; that in fact petitioner did have something to do with "such places." It appears from the evidence that the place kept by Carrall, Ross & Webber at 620 Market street was a clandestine and illicit gambling house, where a game of faro was conducted. The game of faro, as well as all bank-

ing and percentage games, are prohibited by statute, and those who conduct and carry them on are subjected to heavy penalties of fine and imprisonment: Pen. Code, sec. 330. Such games are necessarily conducted in secret, and the places where they are carried on are guarded by every precaution to prevent discovery and prosecution. And not only are they who conduct the games engaged in an unlawful occupation, but those who go there to bet are also guilty of a misdemeanor. Such, in short, was the character of the place with which the petitioner said he had nothing to do. To prove this declaration false, evidence was adduced at the examination to the effect that the petitioner had been in the habit of resorting frequently to the Thalia and other places, where, in private club-rooms, the game of poker was played, and where he usually joined in the game. And it also appeared that he had acted as a "booster," a technical term describing a person who, in the interest of the club-house proprietor, takes a hand in a game to keep it from stopping for want of a sufficient number of players, and who is furnished money to bet with, and allowed to keep his winnings as compensation for his services. All this, however, merely tends to prove that Mr. Meyer's pursuits are not of a laudable character; but it does not prove that the Thalia is such a place as the gambling house at 620 Market street. The difference between the two places is just exactly as broad as the difference between legality and illegality, or, in other words, since we have none but statutory crimes, it is as broad as the difference between guilt and innocence. Faro is a game prohibited under heavy penalties; its conductors and patrons are criminals; and the place where it is carried on is a criminal resort. Poker, played for money, however objectionable in fact, is, in the eyes of the law, as innocent as chess, or any game played for simple recreation; and its votaries, and the places where it is played, are not criminal. There is, therefore, no inconsistency between the declaration of the petitioner that he had nothing to do with such places as a faro bank and the fact that he did frequent club-rooms where poker was played for money. And, since there is neither evidence nor accusation of any other false statement made by him, it follows that he cannot be held for perjury, and must be discharged from custody. It is so ordered.