BISHOP, Acting P. J.
 

 It was charged against the defendant, in the Police Court of the City of Glendale, that he did “unlawfully, through invitation and device, prevail upon N. F. Walton to visit a room and building kept for the purpose of gambling, and in which gambling was conducted and carried on.” We are of the opinion that the judgment of conviction, from which the defendant appeals, should be affirmed, although the evidence reveals that the gambling for which the building was kept was not itself unlawful.
 

 Section 318, Penal Code, is the statute upon which the charge was based. Incidentally, all sections referred to here
 
 *Supp. 861
 
 after are Penal Code sections. Section 318 reads as follows: “Whoever, through invitation or device, prevails upon any person to visit any room, building, or other places kept for the purpose of gambling or prostitution, is guilty of a misdemeanor, and, upon conviction thereof, shall be confined in the county jail not exceeding six months, or fined not exceeding five hundred dollars, or be punished by both such fine and imprisonment.”
 

 The trial was had upon a written stipulation of evidence. In the city of Gardena a social club was being operated. (Its dues were a dollar a year, payable at the end of the year “only if the member is entirely satisfactory.”) The Club was housed in a building leased for its use and was kept for the purpose of enabling its members to play draw poker and low ball poker for money. The stipulation describes how these games are played; we need note only that the games undoubtedly constituted gambling, but a variety of gambling not made unlawful either by the statutes of the state
 
 (Ex parte Meyer,
 
 [1895] 5 Cal. Unrep. 64, [40 Pac. 953] ;
 
 Monterey Club
 
 v.
 
 Superior Court,
 
 [1941] 48 Cal. App. (2d) 131,147 [119 Pac. (2d) 349]) or by any local ordinance. The defendant, the stipulation further sets forth, mailed a letter addressed to N. P. Walton and received by him in Glendale, in which the defendant, signing as secretary for the Club, set forth its location and its advantages, and solicited his membership. “That by reason of said letter he (N. P. Walton) decided to, and did, visit the Gardena Club;”
 

 . . . “that he would not have visited said Club had he not received the letter.” Upon his visit to the Club he found some sixty-six players engaged in playing either draw or low ball poker for money.
 

 Prom the evidence, then, and without dispute, it appears that the defendant prevailed upon N. P. Walton to visit a building kept for the purpose of gambling. Clearly, the defendant has violated the provisions of section 318 as written; his only escape is to have us add to the section after the word “gambling” the further words, not now there, “where such gambling is prohibited by law.” The provisions of the section are clear and unambiguous; they require no interpretation; if any amendment is to be made it should be by the Legislature for “the court is without the power to do” it.
 
 (In re Goddard
 
 (1937), 24 Cal. App. (2d) 132, 141 [74 Pac. (2d) 818].)
 

 
 *Supp. 862
 
 In support of his contention that “gambling” as written in section 318 should be limited to gambling which has been made unlawful, appellant states: “According to a well approved rule of construction sections 315, 318, 330, 331, 337, and 337a, insofar as they relate to the same subject, should be construed together.” An application of the principle of statutory construction referred to proves to be of no assistance to appellant; Section 315, in so far as of interest, reads: “Every person who keeps a house of ill-fame in this state, resorted to for the purpose of prostitution ... is guilty of a misdemeanor ...” In a measure, sections 315 and 318 do deal with the same subject matter, that is, houses kept for prostitution. In one section, the keeping of the house is made a misdemeanor; in the other, prevailing upon a person to visit the house is the act outlawed. The only significance of this to the problem we are considering is that since by no state law (of which we are aware) is it made a public offense to act as a prostitute, section 315 prohibits the keeping of a house for a purpose itself not unlawful, and section 318 makes it a crime to prevail upon one to visit a house where that which goes on has not been made a crime.
 

 No contrary interpretation of the provisions of section 318 is warranted by virtue of sections 330 and 331. The first section declares certain gambling games (some seven were originally listed) to be illegal. No attempt is made to define “gambling” and by no stretch of interpretation can it be said that the section endeavors to list all gambling games. Section 331 prohibits an owner or lessor of a house from permitting any of the games mentioned in section 330 to be played in his house. Neither section refers to a house kept either for the purpose of gambling generally or even for the more limited purpose of carrying on the games listed in section 330. It would seem, then, that sections 330, 331 and 318 are not
 
 in pari materia
 
 except remotely, and that by reading them together no additional light is thrown on section 318.
 

 Section 337 cannot be said to relate even remotely to the same subject as does section 318. By this section any public official is made guilty of a felony who endeavors to save a violator of section 330 from his just deserts, or who votes for or issues a license or permit purporting to authorize the playing of a game banned by section 330. Section 337a deals with various phases of pool-selling and book-making, and adds that an owner of a house may not even once
 
 *Supp. 863
 
 permit its use for any purpose prohibited by the section. We find no guide to the meaning of section 318 in this section. Furthermore, it should be noted that both these sections were added to the Penal Code after the adoption of section 318 (Stats. 1880, p. 40). What the Legislature meant by the clear terms it used in section 318 is not to be found, we are of the opinion, in these irrelevant sections, adopted subsequently.
 

 In support of his statement that these several sections should be read together, appellant cites
 
 In re Chase,
 
 (1931) 119 Cal. App. 432 [6 Pac. (2d) 577]. In this case it was contended that the complaint, charging a violation of section 318 and under which the defendant had been convicted, failed to state a public offense because the place kept for the purpose of gambling was outside of the state. The court concluded that the complaint sufficiently, although with uncertainty, stated that the place referred to was within the state, and remanded the petitioner to custody. It follows that what the court had to say about a state of affairs not before it, that is a complaint referring to a gambling place outside the state, is
 
 obiter dictum.
 
 Moreover, the question discussed (but not decided) was another question than that now under review. The court did, it is true, refer to a group of sections which “in so far as they relate to the same subject, should be construed together.” But doubtless the court did not mean its reference to sections “315-318” to be inclusive, for section 317, since repealed, plainly had nothing to do with the question under discussion. But we note that section 317, which was in the code when section 318 was added, in providing that “Every person who . . . publishes any notice or advertisement of any medicine or means . . . for the prevention of conception ... is guilty of a felony,” furnishes another illustration of the legislative practice of making it a public offense to invite the doing of something itself nowhere declared to be unlawful.
 

 The result is not necessarily illogical; it certainly is not so absurd that it warrants judicial legislation. The Legislature may well have recognized both the evil of gambling and the instinct to gamble which seems inherent in mankind. The public policy against that form of gambling known as a lottery is so well settled that it is expressed in the state Constitution (art. IV, sec. 26.) In some of its other forms, gambling was prohibited by the Legislature by its enactment of section 330, Penal Code, in 1872, based on an earlier stat
 
 *Supp. 864
 
 ute (Stats. 1857, p. 267). Section 330 was amended in 1891 to add to the list of those outlawed other games theretofore lawful. From time to time other forms of gambling may be declared unlawful, and again the ban be withdrawn.
 

 Gambling not prohibited by the Constitution, nor at any given moment declared by the Legislature to be illegal, may, nevertheless, be subject to indirect attack by the Legislature. For reasons commending themselves to the Legislature, the playing of stud-horse poker is expressly made a misdemeanor (section 330) while draw poker is not prohibited. Draw poker for money is nevertheless gambling, and while it may now lawfully be engaged in, equally lawfully the Legislature could attack such evil as it sees in it by providing that no one should be prevailed upon to play it. The policy back of section 318, that of an indirect, partial, protection of the public against an evil, is one that the Legislature may make. In our opinion, section 318 clearly expresses such a policy. “It [the legislature] is free to recognize degrees of harm, and it may confine its restrictions to those classes of cases where the need is deemed to be clearest. As has been said, it may ‘proceed cautiously, step by step, ’ and ‘if an evil is specially experienced in a particular branch of business’ it is not necessary that the prohibition ‘should he couched in all-embracing terms. ’ ”
 
 Miller
 
 v.
 
 Wilson
 
 (1915) 236 U. S. 373, 384 [35 S. Ct. 342, 59 L. Ed. 628, 632].
 

 Appellant’s further contention that he was operating his club under a license from the City of Gardena, even if true, does not better his position. The city, one of the sixth class, could not, if it tried to do so, legalize that which the general law forbids.
 
 (People
 
 v.
 
 Settles
 
 [1938] 29 Cal. App. (2d) (Supp.) 781 [78 Pac. (2d) 274].) Moreover, the most that could be said for the effect of the license would be to authorize the keeping of the Club for the purpose of gambling; "it does not purport to relieve one from the restrictions of section 3.18.
 

 Appellant made a motion in arrest of judgment and now argues that the complaint was insufficient because it did not allege the location of the building that was kept for gambling. The denial of the motion was not error. “The gist of the offense is the giving of the invitation.”
 
 People
 
 v.
 
 Chase
 
 (1931) 117 Cal. App. (Supp.) 775, 780 [1 Pac. (2d) 60]. See also,
 
 People
 
 v.
 
 De Martini
 
 (1914) 25 Cal. App. 9 [142 Pac. 898] ;
 
 People
 
 v.
 
 Pierce
 
 (1939) 14 Cal. (2d) 639, 642 [96 Pac. (2d) 784]. Moreover, if the complaint were subject
 
 *Supp. 865
 
 to criticism in this particular, it would be no basis for a reversal in a case submitted, as this was, on stipulated evidence revealing that no possible prejudice was suffered by the defendant. (Const., art. VI, sec. 4%.)
 

 The judgment of conviction is affirmed.
 

 Pox, J., and Vickers, J. pro tern., concurred.
 

 A petition for rehearing was denied March 16, 1942.