[Civ. No. 13926. First Dist., Div. Two. Mar. 29, 1949.]

ELMER REMMER, Appellant, v. THE MUNICIPAL COURT OF THE CITY AND COUNTY OF SAN FRANCISCO et al., Respondents.

MENLO SOCIAL CLUB, INC. (a Corporation), Appellant, v. EDMUND GERALD BROWN, as District Attorney, etc., et al., Respondents.

John R. Golden for Appellants.

Edmund G. Brown, District Attorney, in pro. per., and Norman Elkington, Assistant District Attorney, for Respondents.

GOODELL, J.—In *Remmer* v. *The Municipal Court et al.*, the petitioner sought a writ to prohibit the trials of appellant and others who had been arrested in raids of the Menlo Social Club for keeping and maintaining a place where draw poker and draw low ball poker were carried on and conducted in violation of section 288 of the Police Code of San Francisco. In *Menlo Social Club, Inc.* v. *Brown, as District Attorney, et al.*, an injunction was sought to prevent further raids and arrests on similar charges. The court denied both the writ of prohibition and the injunction, and these two appeals were taken, and are presented on one record.

Appellants challenge the constitutionality of section 288 on the grounds (1) that it is a duplication of state law, hence in conflict therewith; (2) that the portions thereof which are not conflicting are so inseparable from those which are, that the whole section must fall, and (3) that the legislation is unreasonable.

The first two grounds may be discussed together.

Section 330 of the Penal Code reads as follows: "Every person who deals, plays, or carries on, opens, or causes to be opened, or who conducts, either as owner or employee, whether for hire or not, any game of faro, monte, roulette, lansquenet, rouge-et-noir, rondo, tan, fan-tan, stud-horse poker, seven-and-a-half, twenty-one, hokey-pokey, or any banking or percentage game played with cards, dice, or any device, for money,

checks, credit, or other representative of value, and every person who plays or bets at or against any of said prohibited games, is guilty of a misdemeanor . . .''

Section 331 provides that every person who knowingly permits any of the games mentioned in section 330 (and 330a, not here involved) to be played, conducted, or dealt in any house owned or rented by such person, in whole or in part, is punishable as provided in those sections.

Section 11 of article XI of the Constitution provides that "Any county, city, town, or township may make and enforce within its limits all such local, police, sanitary, and other regulations as are not in conflict with general laws.''

In 1903, the city and county of San Francisco enacted an ordinance, now section 288 of its Police Code, reading as follows: "It shall be unlawful for any person to keep or maintain, or visit, or to contribute to the support of any house or place where gambling is carried on or conducted, or to knowingly let or underlet, or transfer the possession of, any house or premises for use by any person for said purpose.''

■ Draw, and draw low ball, poker, when played for money, are gambling games (*People* v. *Philbin*, 50 Cal.App. 2d Supp. 859, 864 [123 P.2d 159]; *Lavick* v. *Nitzberg*, 83 Cal. App.2d 381 [188 P.2d 758]). Keeping and maintaining a place where those games were played gave rise to the raids.

■ The first contention of appellants is that section 288, Police Code, is in conflict with state law. Section 288 uses comprehensive language. Unlike section 330, Penal Code, it does not enumerate certain games, but deals with *gambling*— all gambling. If the section were applied to any of the 12 or more games prohibited by section 330, Penal Code, it would be to that extent in direct conflict with sections 330 and 331. *In re Sic*, 73 Cal. 142 [14 P. 405]; *Ex parte Hong Shen*, 98 Cal. 681 [33 P. 799]; *In re Hoffman*, 155 Cal. 114 [99 P. 517, 132 Am.St.Rep. 75]; *In re Iverson*, 199 Cal. 582 [250 P. 681]; *In re Simmons*, 199 Cal. 590 [250 P. 684]; *Stanislaus etc. Association* v. *County of Stanislaus*, 8 Cal.2d 378 [65 P.2d 1305]; *In re Portnoy*, 21 Cal.2d 237 [131 P.2d 1].

Respondents concede this, but they couple their concession with the claim that *as to games not prohibited by state law there is no conflict and the ordinance remains valid and operative.*

The court in the Portnoy case, *supra*, said: "The control of gambling activities is a matter concerning which local governments possess power to enact and enforce local regulations not

in conflict with general laws, for the purpose of supplementing those laws. (Const., art. XI, § 11; *In re Murphy*, 128 Cal. 29 [60 P. 465]; *cf. Mann* v. *Scott*, 180 Cal. 550, 556 [182 P. 281]; *In re Hoffman*, 155 Cal. 114 [99 P. 517, 132 Am.St.Rep. 75.)"

Neither draw, nor draw low ball, poker, is prohibited by state law, hence respondents contend that section 288, Police Code, when invoked against places where those gambling games are played as it was here, is not in conflict with sections 330 or 331, Penal Code, or any other state law. We are satisfied that this position is supported by the authorities.

The early case (1887) of *In re Sic*, 73 Cal. 142, *supra*, involved an ordinance of the city of Stockton, comprising seven sections, dealing with opium smoking. Section 3 was held to be a duplication of state law, therefore in conflict therewith and unconstitutional. The court, however, was careful to say: "It will be observed that *we only hold that there is a conflict where the ordinance and the general law punish precisely the same acts*. We do not wish to be understood as holding that the sections of the ordinance which make criminal *other acts not punishable under the general law* are void because the legislature has seen fit to legislate upon the same subject." (Emphasis added.)

In the Iverson case, 199 Cal. 582, 586, *supra*, the court drove home the severability point by citing *In re Sic*, and repeating the last sentence just quoted.

Another case directly in point is *In re Murphy*, (1900), 128 Cal. 29 [60 P. 465]. There an ordinance of the city of Vallejo made it illegal to play "any game played with cards, dice or any device for money." The claim was made, as it is here, that the ordinance was void because in conflict with section 330, Penal Code. In denying a writ of habeas corpus the court said: "It may be that the ordinance includes all that is denounced in the statute, and it may also be that *it includes much more*. The defendant was convicted for playing the game of 'keno' . . . 'Keno' is not mentioned in the code. . . *Since it was competent for the city, by ordinance, to prohibit all games not denounced by the statute, lack of jurisdiction is not made to appear* . . . The ordinance describes the games prohibited with sufficient definiteness. *It condemns all games of chance played for money. From this comprehensive description we must exclude those condemned by the statute* . . . This method of defining offenses is not to

be recommended as a model, but we cannot hold that it renders the ordinance void." (Emphasis added.)

Substitute "draw poker" and "draw low ball poker" for "keno" and you have this case. Appellants, indeed, concede that the language of the Vallejo ordinance is "in legal effect exactly like Section 288 . . ."

■ Appellants claim that the Murphy case and the Portnoy case, *supra,* are irreconcilable one with the other. As we have just seen, the Vallejo ordinance and the San Francisco ordinance are in legal effect exactly alike. The same parallel cannot be drawn between the San Francisco ordinance (in this case), *which is simple,* and the Riverside County ordinance (in the Portnoy case), *which was complicated. People v. Commons,* 64 Cal.App.2d Supp. 925 [148 P.2d 724], involved a Los Angeles ordinance prohibiting concealed weapons. It was contended that the ordinance duplicated the state law and was therefore conflicting. The Portnoy case was there relied on by the defendant, just as it is here, on the claim that the Los Angeles ordinance was inseverable. The court at page 935 said with respect to the Portnoy case: "But the ordinance there in question was, as the court suggests, complicated and the disentanglement of valid from invalid provisions was difficult. Here we see no such difficulty." The court then goes on to say that it is necessary simply to exclude from the operation of the ordinance such of its provisions as are covered by the state law. "This," says the court, "seems to us no more difficult than the exclusions necessary to be made from the ordinances upheld in the cases above cited." This reference is addressed to the Murphy, Hoffman, Iverson and Simmons cases, *supra,* which are cited at page 934 of 64 Cal. App.2d in support of the following statement: "The fact that the ordinance is so framed that its entire prohibition, including both the valid and the invalid parts thereof, is stated by the same words, does not necessarily show that the valid part is inseparable from the invalid . . ." The Commons case contains an excellent discussion of this whole subject and we are in complete agreement with Judge Shaw's treatment therein of these questions of severability and adopt it as our own.

It is difficult for appellants to sustain their contention that the Portnoy case has weakened the authority of *In re Murphy,* or is inconsistent with it, in view of the fact that the former cites the latter as a live precedent. *In re Murphy* has been followed also in the Hoffman, Iverson and Commons cases, *supra,* and in *Ex parte John,* 17 Cal.App. 58, 64 [118 P. 722],

and *Witt* v. *Klimm,* 97 Cal.App. 131, 134 [274 P. 1039], and it seems never to have been criticized. Because it is parallel with the present case we are bound to follow it.

In the Sic case, 73 Cal. 142, *supra,* the possibility of double jeopardy arising from prosecutions under both state law and ordinance appears as one of the reasons for the conflict rule. That could not happen here, since there could be no prosecution under section 331, Penal Code, for keeping or maintaining a place where draw poker is played, as "draw" is not prohibited by section 330 (see *Monterey Club* v. *Superior Court,* 48 Cal.App.2d 131 [119 P.2d 349]).

Nor could there be any such conflict between section 288, Police Code, and section 318, Penal Code, since the former prohibits keeping and maintaining a gambling house while the latter prohibits prevailing upon another to enter one. Under 318 it is not sufficient merely to prove invitation, but "prevailing" must be proved (*In re Chase,* 119 Cal.App. 432, 434 [6 P.2d 577] ; *People* v. *Chase,* 117 Cal.App. Supp. 775, 779 [1 P.2d 60]). The acts denounced by the two sections are entirely different.

These considerations furnish further reasons why no inseverability problem is presented.

Lastly, appellants contend that the legislation is unreasonable and oppressive. They concede that a municipality may properly *regulate* gambling, but argue that it is unreasonable to *prohibit* (by legislation against the maintenance of gambling houses) games which the state itself has not seen fit to prohibit, such, for instance, as draw poker.

In *Ex parte Tuttle,* 91 Cal. 589 [27 P. 933], the Supreme Court definitely held that gambling in the various modes may be either suppressed and prohibited or merely regulated, and that "a wide discretion is committed to the law-making body." That case contains strong language respecting the state's policy on the subject of gambling in general. Several later cases have spoken on the same subject. In *People* v. *Haughey,* 48 Cal.App.2d 506, 511 [120 P.2d 121], this court said "The policy of the state toward commercial gambling is clear and unequivocal. A mere superficial reference to the Penal Code reveals that commercial gambling in all of its phases has been uniformly condemned for many years." To the same effect is *People* v. *Sullivan,* 60 Cal.App.2d 539, 542 [141 P.2d 230], where numerous cases are cited.

This general policy of the state finds expression in section

318, Penal Code, just discussed. Section 330 makes it unlawful to play 12 or more specified games and section 331 makes it unlawful for anyone to permit *such specified games* to be played in any house owned or rented by him. Section 318, on the other hand, makes it unlawful to prevail "upon any person to visit any room, building, or other places kept for the purpose of gambling . . ." It is "an indirect, partial, protection of the public" against *all* gambling whether outlawed by section 330, or not. (*People* v. *Philbin,* 50 Cal.App.2d Supp. 859, 864 [123 P.2d 159].)

In *Ex parte McClain,* 134 Cal. 110 [66 P. 69, 86 Am.St.Rep. 243, 54 L.R.A. 779], an ordinance was attacked as is section 288 on the ground that it was unreasonable. At page 111 the court said: "It may be concluded . . . that in a reasonable exercise of its police powers a municipality may pass any ordinance in furtherance of the avowed general policy of the national and state government. In this regard our cities and counties draw their power, not from legislative permission, but from the direct grant of the constitution itself, which, by section 11 of article XI, empowers them to make and enforce within their limits all such local, police, sanitary, and other regulations as are not in conflict with general laws."

Section 288, Police Code, falls squarely within the doctrine of the McClain case. Its provisions against keeping or maintaining a place where gambling is carried on are directly in furtherance of the avowed general policy of the state. By section 318, Penal Code, the Legislature puts this policy into action by prohibiting any person to prevail upon another to enter a place where gambling *of any kind* is carried on; by section 288 the municipality gives expression to the same state policy by prohibiting the keeping or maintenance of such a place.

The case of *In re Hall,* 50 Cal.App. 786 [195 P. 975], relied on by appellants, is readily distinguishable since there exists no such public policy with respect to dancing—the subject of the Pasadena ordinance held invalid in that case. Gambling and dancing are, of course, altogether different.

The orders are affirmed.

Nourse, P. J., and Dooling, J., concurred.

A petition for a rehearing was denied April 28, 1949, and appellants' petition for a hearing by the Supreme Court was denied May 26, 1949.