[Crim. No. 3781. First Dist., Div. One. May 24, 1960.]

In re JAMES A. FARRANT, on Habeas Corpus.

232

Marcus & Bradbard for Petitioner.

Stanley Mosk, Attorney General, Arlo E. Smith and Albert W. Harris, Jr., Deputy Attorneys General, John A. Nejedly, District Attorney (Contra Costa), and R. H. Betzenderfer, Deputy District Attorney, for Respondent.

TOBRINER, J.—We deal here in a problem of state preemption of local regulatory power: does Penal Code, section 330, prohibiting certain specified gambling games, so occupy the field of the regulation of gambling as to exclude a county ordinance forbidding all gambling? Petitioner also presents a subsidiary question as to the vague and indefinite character of the ordinance. ■■■ As we shall point out, we have concluded that no statewide scheme of legislation as to gambling preempts the total field and that there thus remains to the county the right of local regulation. ■■■ Furthermore, we do not find the ordinance too vague and uncertain for enforcement.

Petitioner brought this proceeding in habeas corpus upon the ground that the sheriff of Contra Costa County unlawfully restrained him on the basis of a criminal complaint issued by the Municipal Court of the Concord Judicial District in that county. The complaint charged petitioner with

the violation of Contra Costa Ordinance Number 142; in substance, it alleged that petitioner and others did unlawfully "play and carry on a game played with dice for money and other representatives of value" within the county.

Since petitioner claims the ordinance unconstitutionally caused "conflict in jurisdiction" with State Penal Code, section 330, we must determine the interrelationship of the juxtaposed enactments.* Article XI, section 11, of the California Constitution sets forth the basic chart of preemption: "Any county, city, town, or township may make and enforce within its limits all such local, police, sanitary and other regulations *as are not in conflict with general laws*" (emphasis added) and the cases have defined and applied this precept.

The recent decision of the Supreme Court in *Abbott* v. *City of Los Angeles* (1960), 53 Cal.2d 674 [3 Cal.Rptr. 158, 349 P.2d 974], summarizes the criterion by which we examine whether or not the Legislature has occupied a particular field to the exclusion of a local body. Basically, the court states that the "rules . . . prevent any legislation by a local body (other than in furtherance of the state law) when the entire field, that is the subject matter of the ordinance, has already been fully occupied by the state." (P. 682.) Further elaborating the principle, the court quotes *Pipoly* v. *Benson* (1942), 20 Cal.2d 366 [135 P.2d 482, 147 A.L.R. 515], which points out the obvious conflict if the " 'statute and an ordinance are identical' " (p. 683); that " '[w]here the statute contains language indicating that the Legislature did not intend its regulations to be exclusive the general rule permitting additional supplementary local regulations has been applied' "; that " '[c]onversely where the statute contains express provisions indicating that the Legislature intends its

---

*Penal Code, section 330, provides, "Every person who deals, plays, or carries on, opens, or causes to be opened, or who conducts, either as owner or employee, whether for hire or not, any game of faro, monte, roulette, lansquenet, rouge et noire, rondo, tan, fan-tan, stud-horse poker, seven-and-a-half, twenty-one, hokey-pokey, or any banking or percentage game played with cards, dice, or any device, for money, checks, credit, or other representative of value, and every person who plays or bets at or against any of said prohibited games, is guilty of a misdemeanor. . . ."

Ordinance 142 reads: "Every person who within the County of Contra Costa, deals, plays or carries on, opens or causes to be opened, or who conducts, either as owner or employee whether for hire or not any game played with cards, dice or any device for money, checks, credit, or other representatives of value, and every person who plays or bets at or against any of said games, is guilty of a misdemeanor, and shall be punished by a fine of not more than FIVE HUNDRED DOLLARS ($500.00), or by imprisonment in the County Jail not exceeding six (6) months or by both such fine and imprisonment."

234

regulations to be exclusive within a certain field, the courts have given effect to this intention' '' provided that the Legislature effectuates such intention by an '' 'affirmative act . . . occupying that field. . . .' '' (Pp. 683, 684.) The Supreme Court likewise relies upon *Tolman* v. *Underhill* (1952), 39 Cal. 2d 708 [249 P.2d 280], which explains that the test lies not alone in the "language used but by the whole purpose and scope of the legislative scheme." (P. 712.)

The very nature of the test discloses that its application must be *sui generis* to the particular field involved.

Thus an expression of the legislative scheme may be so detailed and extensive that it discloses a legislative purpose to exclude all local regulation; on the other hand, the enactment may be so confined as to demonstrate a legislative purpose to leave room for local action. The courts then look not only for that vague abstraction known as legislative intent but for the concrete provisions of the statute to see if they embody the design either to occupy the whole field or only part of it, leaving to local bodies an implied freedom to supplement such state legislation.

The impact of preemption finds illustration in a variety of fields. There are the areas in which the courts have held the state to have assumed full occupancy. Thus in *Abbott* the court points out, ''. . . the fields of licensing certain types of business activities (*Agnew* v. *City of Culver City, supra*), regulating traffic on public highways (*Pipoly* v. *Benson, supra*), presentation of claims for damages against local bodies (*Eastlick* v. *City of Los Angeles*, 29 Cal.2d 661 [177 P.2d 558, 170 A.L.R. 225]), tests for loyalty as prerequisite to public employment (*Tolman* v. *Underhill*, 39 Cal.2d 708 [249 P.2d 280]; *Bowen* v. *County of Los Angeles*, 39 Cal.2d 714 [249 P.2d 285]), and labor's 'right to work' (*Chavez* v. *Sargent*, 52 Cal.2d 162 [339 P.2d 801]), have all been held to have been preempted by the state. . . .'' (P. 682.)

In the Abbott case itself the Supreme Court invalidated sections 52.38-52.53 of the Los Angeles Municipal Code, "which constitute a 'criminal registration act.' '' (P. 676.) The court found that the statewide registration as a means of the apprehension of criminals appeared from the fact that '' (1) that prevention of crime and apprehension of criminals is of statewide concern . . ., (2) that criminal identification together with the maintenance and dissemination of criminal statistics is best handled at state level, (3) that all persons who commit three or more felonies are recidivistic

in character, (4) that arson, narcotics and sex offenses are types of crime apt to be recidivistic . . ., and (5) that of the three, sex offenders only require registration for public protection.'' (P. 687.) The court further found conflicts between the ordinance and the state laws ''in the conventional and strictest sense of the word 'conflict.' '' (P. 688.)

On the other hand, in different situations the state legislation has been held not to preempt the field. In the area of police regulation, for example, the courts have decided that a city may prohibit the possession of slot machines although the state law forbade operation and use of such machines. (*Sternal* v. *Strand* (1946), 76 Cal.App.2d 432 [172 P.2d 921].) A state law regulating the sale of opium ''by requiring the seller to make certain inquiries and keep a record of the facts'' (*Ex parte Hong Shen* (1893), 98 Cal. 681, 683 [33 P. 799]) did not occupy the field to such an extent as to invalidate a local ordinance forbidding the sale of opium ''except upon prescription of a physician furnished by the purchaser.'' (P. 689.)

When we examine the field of state, as opposed to county, regulation of gambling, which is involved here, we find the early case of *In re Murphy* (1900), 128 Cal. 29 [60 P. 465], dispositive. Petitioner there sought a writ of habeas corpus upon the ground that the applicable Vallejo ordinance conflicted with section 330 of the Penal Code. As the court states, ''The ordinance mentioned no particular game but provides that 'every person who, within the city of Vallejo, deals, plays, or carries on, opens, or causes to be opened, or who conducts, either as owner or employee, whether for hire or not, any game played with cards, dice or any device for money,' etc., is punishable as described.'' (P. 30.) The language of this ordinance parallels that of Contra Costa County. As in the instant case, petitioner contended that the ordinance could not withstand the force of the statute. The Supreme Court denied the petition, holding that ''the ordinance includes all that is denounced in the statute, and it may also be that it includes much more'' (p. 30), but that petitioner, charged with playing of the game of ''keno,'' failed to show that this was the proscribed ''percentage game'' included in the code provision. The court extracts from the overall city ordinance those specific games prohibited by state statute. The ordinance ''condemns all games of chance played for money. From this comprehensive description we must exclude those condemned by the statute.'' (P. 31.) The court states, ''Since

it was competent for the city, by ordinance, to prohibit all games not denounced by the statute, lack of jurisdiction is not made to appear.'' (P. 30.)

The Murphy case has been followed in numerous instances involving gambling operations. *In re Portnoy* (1942), 21 Cal. 2d 237 [131 P.2d 1], concerned an ordinance which prohibited the owner or lessee from establishing a house in which gambling activities were conducted and to that extent duplicated the state law. The ordinance, however, applied to a '' 'principal, agent, employee, servant, clerk, waiter, cashier or dealer,' as well as to an owner or lessee,'' (p. 241) so that respondents contended that the ordinance should be sustained because of a wider coverage than the Penal Code. Although the court found the invalid portions of the ordinance inseparably connected with the valid ones and struck down the whole of it, the court cites *Murphy* for the proposition that ''[t]he control of gambling activities is a matter concerning which local governments possess power to enact and enforce local regulations not in conflict with general laws, for the purpose of supplementing those laws.'' (P. 239.)

In holding that a state statute prohibiting the carrying of concealed weapons did not preempt a local ordinance forbidding the carrying of certain weapons, whether concealed or not, *People* v. *Commons* (1944), 64 Cal.App.2d Supp. 925 [148 P.2d 724], likewise cites and approves *In re Murphy,* saying, ''The fact that the ordinance is so framed that its entire prohibition, including both the valid and the invalid parts thereof, is stated by the same words, does not necessarily show that the valid part is inseparable from the invalid, as will appear from consideration of the ordinances upheld in *In re Murphy* (1900), 128 Cal. 29 [60 P. 465]. . . .'' (Pp. 933-934.)

Finally, *Remmer* v. *Municipal Court* (1949), 90 Cal.App. 2d 854 [204 P.2d 92], relies heavily on *In re Murphy.* In that case petitioner sought a writ of prohibition as to arrests ''for keeping and maintaining a place where draw poker and draw low ball poker were carried on and conducted. . . .'' (P. 855.) Section 330 of the Penal Code prohibits such activities as to ''stud-horse poker'' and 11 other specified games. Section 288 of the San Francisco Police Code prohibited the maintenance or conduct of a ''place where gambling is carried on or conducted.'' As Justice Goodell pointed out, ''Section 288 uses comprehensive language. . . . If the section [of the ordinance] were applied to any of the 12 or more games pro-

hibited by section 330, Penal Code, it would be to that extent in direct conflict. . . .'' (P. 856.)

Relying upon *In re Murphy* this court stated that it could exclude from the comprehensive description of the ordinance the specific games condemned by the statute. Since the ''disentanglement'' of the specifically prohibited games of the Penal Code from the general prohibition of the local regulation can be achieved without difficulty the court explains that the situation differs from that in the Portnoy case in which the court found the provisions of the Los Angeles ordinance inseverable. The court in *Remmer* concludes, ''It is difficult for appellants to sustain their contention that the Portnoy case has weakened the authority of *In re Murphy*, or is inconsistent with it, in view of the fact that the former cites the latter as a live precedent. *In re Murphy* has been followed also in the Hoffman, Iverson and Commons cases, *supra*, and in *Ex parte John*, 17 Cal.App. 58, 64 [118 P. 722], and *Witt* v. *Klimm*, 97 Cal.App. 131, 134 [274 P. 1039], and it seems never to have been criticized. Because it is parallel with the present case we are bound to follow it.'' (P. 858.)

*In re Murphy* is thus firmly embedded in the law of the state, and appellant recognizes he must overcome it if he is to prevail. Appellant claims the Penal Code does not specifically prohibit ''keno,'' so that the ordinance in *Murphy* did not literally conflict with the state law, whereas, here, ''games with dice'' appears in both state and local enactment. *Murphy*, however, did not turn upon whether or not ''keno'' as such makes a dual verbal appearance but upon the fact that the ordinance applies to all gaming except that covered by the state law and that petitioner failed to show keno fell within the exception. To get within that narrow, state preempted area, i.e., the banking or percentage game, petitioner was compelled to show keno constituted such a game. He failed to do so, just as petitioner here cannot show at this stage of the proceedings that he engaged in a banking or percentage game. The reason the complaint as to keno could stand resided in the fact keno was *not* shown to be a preempted banking or percentage game, and petitioner equally fails here to show that *his* dice game was a preempted banking or percentage game.

The distinction between the dice game in general, prohibited by the ordinance, and the banking or percentage game played with dice, forbidden by the code, serves to distinguish such cases as *People* v. *Villarino* (1955), 134 Cal.App.2d Supp.

893 [286 P.2d 86], cited by petitioner. Thus in that case the prohibition of the statewide legislation and the local ordinance coincided. The city ordinance declared that no person within the city should be addicted to the use of narcotics or use narcotics except when administered by or under the direction of a person authorized by the state, while the state enactment (Health & Saf. Code, § 11721) declared that " ' [n]o person shall unlawfully use or be addicted to the unlawful use of narcotics. . . .' " (P. 894.) No corresponding identity occurs in the instant situation; here, since the banking or percentage game is automatically removed from the local ordinance, the type of game prohibited by each jurisdiction differs.

Finally the fact that the Legislature has not enlarged the scope of section 330 since the 1900 decision in *Murphy* constitutes in itself confirmation of the legislative purpose not to preempt the whole field. The courts presume that the Legislature, aware of judicial decisions, enacts and amends statutes in the light of such knowledge. (*Cole* v. *Rush* (1955), 45 Cal.2d 345, 355 [289 P.2d 450, 54 A.L.R.2d 1137]; *People* v. *Gorshen* (1959), 51 Cal.2d 716, 726 [336 P.2d 492].) The ordinances of San Francisco (*Remmer* v. *Municipal Court, supra*), and Fresno (*People* v. *Ambrose, supra*) serve as examples of the common acceptance of the right of local government to operate in the field of gambling. Indeed, the Supreme Court in *Portnoy* (21 Cal.2d 239, 240) recognized that the historical regulation of gambling by local bodies did not fall within the area of total state preemption, contrasting that field with the statewide regulation of highway traffic upheld in *Pipoly* v. *Benson* (20 Cal.2d 366). The whole development of state and local regulation in this area, which has related to the decisions, refutes petitioner's contention of the exclusion of local government. Adoption of such a position would snarl the pattern of the existing gambling regulations in the state.

The Murphy decision and the subsequent Remmer decision dispose of petitioner's argument that the alleged inseparability of the valid and invalid portions of the ordinance condemn it in its entirety. As we have pointed out, these cases conclude that it is not difficult to leave intact that portion of the ordinance which does not pertain to games prohibited by the state, and *Remmer* specifically distinguishes *In re Portnoy* upon which petitioner relies.

This demarcation between local and state prohibition likewise answers any contention that the ordinance is so vague

and uncertain as to be unconstitutional. The ordinance must be read as excluding the state-prohibited gambling, and with that viewpoint, it is perfectly clear and certain.

In conclusion, while we recognize the rather fine line drawn here between state prohibition of gambling with dice in a banking or percentage game and a county regulation of gambling with dice in general, and while we are cognizant of the power of the Legislature to preempt the whole field of gambling and thereby simplify the problem of enforcement, we deal here in a historical setting of both statute and precedent long on the books. We do not believe this court would be at all warranted in overturning law so fixed and settled.

We deny the petition.

Bray, P. J., and Duniway, J., concurred.