[Civ. No. 19297. First Dist., Div. One. Mar. 29, 1961.]

FLORESTA, INC. (a Corporation), Appellant, v. THE CITY COUNCIL OF THE CITY OF SAN LEANDRO et al., Respondents.

600

Bruner & Minder and Stephen M. Chandler for Appellant.

Stanley Mosk, Attorney General, and Wiley W. Manuel, Deputy Attorney General, as Amici Curiae on behalf of Appellant.

Arthur M. Carden, City Attorney, and Glenn A. Forbes, Assistant City Attorney, for Respondents.

Charles R. Martin, City Attorney (San Marino), as Amicus Curiae on behalf of Respondents.

TOBRINER, J.—This case apparently presents for the first time the precise question whether a city, pursuant to a zoning ordinance, may validly prohibit a cocktail lounge in a shop-

ping center. The uniqueness of the question does not, however, render the answer difficult. We shall point out in more detail *infra* that in spite of the contention that the field of liquor regulation has been exclusively pre-empted by the state, the municipal function of planning and zoning is not defeated because its incidence may result in the prohibition of a cocktail lounge at a particular locality. We shall show, likewise, that the presentation before the local agencies sufficiently supported their denial of the sought permit and that their findings adequately upheld such denial. Finally, as the prior comments indicate, we think that appellant followed the proper procedure in presenting the question of constitutionality for our adjudication.

Section 7-3-143.2 of the San Leandro Municipal Code of 1957 provides that "No dance hall, road house, night club, commercial club, or any establishment where a liquor is served . . . shall be established in any District, closer than two hundred (200) feet to the boundary of any Residential District" unless a permit is obtained for that purpose. Section 7-3-163 declares that in order to grant such use permit "the findings of the Board shall be that the establishment, maintenance, or operation of the use or building applied for will not, under the circumstances of the particular case, be detrimental to the health, safety, peace, morals, comfort, or general welfare of persons residing or working in the neighborhood of such proposed use nor be detrimental or injurious to property and improvements in the neighborhood or to the general welfare of the City."

Appellant filed its application for a use permit for the establishment, maintenance, and operation of a cocktail lounge in the Floresta Shopping Center in San Leandro. At a public hearing before the Board of Zoning Adjustments appellant, in support of its contention, urged that the proposed use "would not under the circumstances of the particular case, be detrimental to the health, safety, peace, morals, comfort, or general welfare of persons residing or working in the neighborhood. . . ." Appellant offered a copy and explanation of the proposed plans for the location and construction of the lounge and a copy of an opinion of the city attorney as to an application for a use permit for a bowling alley and restaurant at another location, stating that although the city could regulate the use of property within 200 feet of residential districts, "such regulations must be reasonable, and must be issued as a result of some peculiar circumstance or condition existing

at the specific location which does not exist in other locations otherwise situated.''

In addition, appellant's attorney described the existing commercial uses in the area, which encompassed three service stations, a milk depot, a construction company office, and a tract office, as well as a restaurant and cocktail lounge which predated the enactment of the ordinance. The Floresta Shopping Center itself, according to the attorney, included ''a barber shop, beauty salon, cleaners, drugs, a restaurant, a super market and a variety store.'' Emphasizing that cocktail lounges had been permitted in other instances in similar areas within the city, the attorney denied that the proposed use would cause adverse effects of any kind, including difficulties of parking or traffic.

Representatives of the Floresta Home Owners Association opposed the presence of a cocktail lounge because of the alleged danger to the neighborhood children, the increased problems of parking and traffic control, the possibility of noise in the area, the potentiality of the presence of unsavory people and their use of profane language, and the threat of general nuisance. The board denied the permit because of the proximity of the lounge to residential property, the increase in the noise, and the danger to pedestrian traffic. The city council sustained the board's decision.

As a consequence, appellant petitioned the superior court for a writ of mandamus and request for declaratory relief, asserting the arbitrary and discriminatory nature of the city's decision, and requesting that the court order the city council to issue to appellant the desired permit. As a separate cause of action appellant requested a declaration of the unconstitutionality of the ordinance. The court denied the petition and request, finding that the ordinance was constitutional and that the actions of respondents were neither arbitrary nor discriminatory.

We consider separately the following issues: the constitutionality of the zoning ordinance, the adequacy of the presentation before the local agencies and the findings based upon them, and the propriety of the procedure to present the constitutional question.

As to the first issue, we shall point out that the sections of the San Leandro Municipal Code here involved neither unconstitutionally invade a field pre-empted by the state nor constitute an attempted exercise of local option. An analysis of the zoning regulations of San Leandro demonstrates that although

appellant would identify them with legislation regulating the sale of liquor, they seek a different objective, attainable by different means.

Article XX, section 22, of the Constitution of the State of California, as enacted November 6, 1934, provides in part: "The State Board of Equalization shall have the exclusive power to license the . . . sale of intoxicating liquors in this State. . . ." As amended November 6, 1956, this section stated, "The Department of Alcoholic Beverage Control shall have the exclusive power, *except as herein provided and in accordance with laws enacted by the Legislature,* to license the manufacture, importation and sale of alcoholic beverages in this State. . . ." (Emphasis added.)

The Legislature (Stats. 1935, ch. 330, p. 1130) enacted section 15 of the Alcoholic Beverage Control Act and limited the power of the board to license and regulate the sale of intoxicating liquors. Section 15 has been codified in the present Business and Professions Code, sections 23790 and 23791. Section 23790 provides: "No retail license shall be issued for any premises which are located in any territory where the exercise of the rights and privileges conferred by the license *is contrary to a valid zoning ordinance* of any county or city unless the premises had been used in the exercise of such rights and privileges at a time prior to the effective date of the zoning ordinance." (Emphasis added.) Section 23791 states: "Nothing in this division interferes with the powers of cities conferred upon them by Sections 38690 to 38706, inclusive, of the Government Code, the 'Zoning Law of 1917.'"

The Legislature has, then, provided that a license shall not be issued for any premises contrary to a "valid zoning ordinance." Our sole question, therefore, must be whether or not the San Leandro ordinance which restricts the use of commercial property within 200 feet of a residential district is a "valid zoning ordinance."

Appellant and amicus curiae attempt, here, to defeat the ordinance upon the ground that the field has been pre-empted by the state. They argue that although the ordinance, in general, controls "recreational and commercial establishments it also expressly mentions and singles out 'or any establishment where liquor is served.'" While other business establishments are permitted in the area, the cocktail bar, in the absence of a permit, is prohibited. The isolation and identification of the cocktail lounge becomes, according to appellant and amicus

curiae, a special regulation of the sale of liquor. Such regulation, they argue, can be exacted only by the Department of Alcoholic Beverage Control.

The argument confuses the function of zoning with that of the control of the sale of liquor. The essence of zoning lies in metropolitan and regional planning; it is the use and treatment of public and private land and its appurtenances in the interests of the community as a whole.[1] The factors and reasons that determine the imposition of metropolitan zoning are entirely different from those which control the regulation of the consumption of liquor. To compress zoning or city planning into the mould of liquor regulation is to reduce its compass to a single aspect of its impact. That it may cover the regulation of the sale or consumption of liquor does not mean that it merely proposes liquor control; its sweep and design are wide; its particular application in the prohibition of a cocktail lounge does not correspondingly limit its scope or purpose.

 The reliance of appellant and amicus curiae upon *Town of Los Gatos* v. *State Board of Equalization* (1956), 141 Cal.App.2d 344 [296 P.2d 909], for the proposition that zoning ordinances cannot "single out" certain vendors of liquor and prohibit their operation does not establish their case. Appellant refers to the following language: "Zoning ordinances cannot single out and prohibit the sale of liquor as such. There must be a reasonable classification of districts and in any zoning district in which, for example, other retail businesses are allowed to be conducted, it might well be and probably would be unreasonable and arbitrary to exclude the sale of liquor. In such a situation, it would be for the Board of Equalization (now Department of Alcoholic Beverage Control) to determine the propriety of granting liquor licenses to

[1]The concept of zoning reaches back historically to the Renaissance plans of public planning that started in Italy and spread to France; it is symbolized by the famous plan of Sir Christopher Wren for London after the fire of 1666 and in the United States by the L'Enfant's planned cities of Washington and Indianapolis; indeed, before its first significant development in the city planning of New York in this country, such planning had been widely accepted in Sweden and Germany. As is stated in Recent Social Trends in the U.S. by the Research Committee on Social Trends (1934, McGraw Hill Book Co., Inc.), "The zoning movement . . . began over 30 years ago and today every state and the District of Columbia has adopted some form of zoning legislation or regulation. Since 1916 when New York City adopted a comprehensive zoning ordinance, the decided trend has been to integrate zoning with city planning. Today all but two states have comprehensive zoning legislation." (P. 1440.)

locations within such a district." (Pp. 346-347.) The court's statement, however, is dicta; the decision actually held that the State Board of Equalization did not have the "right to grant Bocci's [real party in interest's] application in view of the existing zoning restrictions in the district in which the premises are located." (P. 345.) The further statement of the court applies here: "It is clear that the Legislature did confer upon counties and cities the right to control the districts in which various types of liquor business could be carried on by the enactment of valid zoning ordinances." (P. 347.)

Moreover, the dicta alludes to the exclusion of the "sale of liquor" in a zoning district where "other retail businesses are allowed to be conducted. . . ." (P. 346.) We adjudicate the propriety of a license for a cocktail bar or lounge. Even if we were to assume that no distinction could be made between the retail sale of liquor and the sale of other commodities, the social impact of a cocktail bar obviously differs fundamentally from that of a store which sells liquor for consumption off the premises.

Appellant's further contention that the department alone is empowered to determine whether "a particular liquor license should be granted or denied"; that the department, and not the municipality, should apply the "standards" for the license, and that the municipality's enforcement would engender conflict between it and the state merely reargues the pre-emption point in other terms. These propositions overlook the Legislature's express affirmation that retail licenses should not be issued for premises in any territory where it would be contrary to valid zoning ordinances, an indication that the Legislature intended to leave such zoning to local administration. ■ As is stated in *Pipoly* v. *Benson* (1942), 20 Cal.2d 366 [125 P.2d 482, 147 A.L.R. 515], a case cited by appellant, "Where the statute contains language indicating that the legislature did not intend its regulations to be exclusive, the general rule permitting additional supplementary local regulations has been applied." (P. 371.) To the same effect: *Abbott* v. *City of Los Angeles* (1960), 53 Cal.2d 674, 683 [3 Cal.Rptr. 158, 349 P.2d 974]; *In re Farrant* (1960), 181 Cal.App.2d 231, 233 [5 Cal.Rptr. 171].

■ Appellant finally asserts that the zoning ordinance covertly designs local option, but the argument does no more than frame a third statement as to pre-emption. Of course, ordinances which impose general regulations of the liquor traffic through licenses, taxes or other such mechanisms of

control must succumb to the exclusive power of the department as to that subject matter. (*Desert Turf Club* v. *Board of Supervisors* (1956), 141 Cal.App.2d 446 [296 P.2d 882]; *Town of Los Gatos* v. *State Board of Equalization, supra,* 141 Cal.App.2d 344.) The San Leandro ordinance, however, seeks only to restrict the sale or consumption of liquor as to retail establishments and cocktail bars within 200 feet of residences. Instead of eliminating the use of alcoholic beverages by San Leandro's residents, the ordinance permits the sale of liquors and the presence of cocktail bars elsewhere in the city. The ordinance is a geographic restriction as to place of sale and use of liquor, not an invasion of the state's general regulation and limitation of the consumption of liquors as such.

We therefore conclude, in accordance with the decisions of other states[2] and an analogous ruling of the Alcoholic Beverage Control Appeals Board in 1957,[3] that the questioned

---

[2]Other states have faced the problem of zoning ordinances restricting the sale of liquor. For example, a Texas appellate court upheld a zoning provision defining the areas within which liquor could be sold. In *Louder* v. *Texas Liquor Control Board* (Tex.Civ.App., 1948), 214 S.W.2d 336, the court stated: ''It is a matter of common knowledge, recognized by the courts, that the sale of intoxicants is accompanied with objectionable features not common to other types of commercial enterprises, and such facts constitute valid grounds for a separate classification or prohibition thereof, in a given commercial area, for the protection of the health, morals, safety, peace, and convenience of the public. *Eckert* v. *Jacobs, supra.*'' (P. 341.) The Supreme Court of Illinois in *Saladino* v. *City of South Beloit* (1956), 9 Ill.2d 320 [137 N.E.2d 364], upheld a zoning ordinance which restricted the location of taverns to '' 'C-Business Districts,' '' along with ''amusement places, clubs, dance halls, motels and trucking terminals and, by omission, excluded them from classes 'A and B-Business Districts' wherein innumerable sales and service uses'' were permitted. (P. 367.) The court concluded that ''many reasons related to the public welfare, safety and morals may be suggested which cause it to be both desirable and reasonable that the shopping and services areas of a city's business districts, to which its citizens are drawn to fulfill their daily needs, be kept from the influences attendant to tavern operations.'' (P. 367.)

[3]In a case before the Alcoholic Beverage Control Appeals Board in 1957 that board considered an ordinance of the city of Carmel-by-the-Sea prohibiting the sale of intoxicating liquors in any part of the city except a specifically defined area within a C-1 district, except that ''alcoholic liquors may be sold in Districts C-1 and C-2 provided that such sale shall be in conjunction with and subordinate to the carrying on of another primary business'' permissible in that district. The board held: ''The 'buffer zone' created by the City of Carmel-by-the-Sea was a reasonable solution of the vexatious problem which faces all planning commissions, that is, the problem of so defining various uses as to minimize the impairment of that portion of a residential district which might be contiguous to a commercial district. . . . The present ordinance creates a district which is a reasonable transition between that area where alcoholic

zoning provisions of the San Leandro Municipal Code do not fail on constitutional grounds.

We turn to appellant's second issue, comprising the contentions that the denial of the permit did not rest upon the submitted evidence, that the burden of proving detrimental effects falls upon the city, and that the findings do not support the denial. Despite the informality of the proceedings before the local agencies and the lack of evidence in the strictly judicial sense, we believe that these bodies properly denied the use permit on the basis of the views presented them; the city did not bear the burden of proof; the findings adequately supported the decision.

▮ Appellant's first contention that the proof does not sustain the denial of the permit, but that the objections to the cocktail lounge filed by individuals induced the ruling, cannot stand. While it is true that the board relied upon opinion evidence, particularly statements of the attorneys representing the involved parties, the nature of the hearing itself evokes such presentation. Thus appellant's attorney expressed his opinion that the proposed cocktail lounge would neither cause traffic or parking problems, nor endanger neighborhood pedestrians and children, nor produce sufficient noise to disturb the adjoining homeowners. He pointed to one existing bar in the general neighborhood and argued that the addition of the proposed cocktail lounge would not alter the character of the area. On the other hand, opposing counsel denounced the lounge as a danger to those using the other facilities of the shopping center and as an invasion of the rights of the neighbors to quiet and security.

▮ Most of the opinion testimony set forth above would neither have been admissible in a court of law nor have served as a proper basis for its decision, but such rules of admissibility of evidence do not bind administrative agencies. (Witkin, California Evidence, § 7, p. 7.) ▮ The courts have regarded the weight and sufficiency of the evidence as matters of administrative discretion and have sustained the agency's decision if "substantial evidence" supports it. (Wit-

beverage licensees may operate without restriction and a residential area where they may not operate at all. The objective of the municipality being a valid one, and its method of accomplishment reasonable, it was error on the Department of Alcoholic Beverage Control to hold the ordinance invalid and to approve an application for a license, the use of which would violate the provisions of the ordinance.'' (In the Matter of the Protest of City Council, City of Carmel-by-the-Sea against the issuance of off-sale general license to: Paul E. Chedester and Robert A. Aebersold (A.B. 537 & 538).)

kin, California Evidence, § 7, p. 9.) ■ The present situation compares to that of *Southern Cal. Jockey Club* v. *California etc. Racing Board* (1950), 36 Cal.2d 167 [223 P.2d 1], involving a review of a denial of an application for a horse racing license. There the statute provided that the "board shall not issue a license to conduct a horse race meeting . . . unless . . . the board . . . has determined that conducting horse racing meetings at such place will be in the public interest. . . ." (Stats. 1941, ch. 1248, p. 3129.) After determining that under the wording of the statute an applicant for a license had the "burden of proving, at least, that public interest and the purposes of the act would not be detrimentally affected by the proposed new track," (p. 177) the court concluded: "Thus it was for the board to determine whether plaintiff's evidence was such that the burden had been met. This is especially true where most of the evidence consists of opinions, and the issues involved—public interest and purposes of the act—are general and incapable of exact definition." (P. 177.) In that case the court found ample evidence in the various forms of opinion evidence to support the administrative agency's determination.

The general presumption that the necessary facts sustain a finding (*Wheeler* v. *Gregg* (1949), 90 Cal.App.2d 348, 360 [203 P.2d 37]), as well as the foregoing language, leads us to hold that the zoning board's denial of a use permit rested upon sufficient evidence. The nature of the administrative process in this instance is such as to call for generalized statement. Its purpose is not to prove a precise fact, as in a trial in court, but to weigh the social and public advantages or disadvantages of the issuance of the permit.

■ Nor are the decisions of the Board of Zoning Adjustments and the city council defeated by appellant's contentions that they would not have been reached "had it not been for the some 433 objections filed with the City" and that "[i]t has repeatedly been held invalid in this State to condition the granting of a use permit upon the approval of a certain number or percentage of adjoining property owners . . . adversely affected." The ordinance did not, however, provide that the permit turn upon the vote of property holders; the filed opinions were advisory only. The hypothesis that the board decided the matter solely upon the objections rather than upon an application of the standards of the municipal code is entirely unproven. Moreover, the courts have upheld even more formal expressions of affected persons as to their

approval or disapproval of zoning programs or industry marketing plans.[4] The presence of the protests clearly does not invalidate the decisions of the board or the council.

 Appellant fails in its second contention that the doctrine of contemporaneous administrative construction compels a conclusion that the burden of proving detrimental effect rests on the city rather than the appellant. To sustain its position, appellant relies upon the opinion of the city attorney, which we have set forth *supra,* to the effect that "such regulations must be reasonable, and must be issued as a result of some peculiar circumstance or condition existing at the specific location which does not exist in other locations otherwise situated." Yet the opinion cannot change the plain meaning of the ordinance. The city zoning ordinance prohibits the establishment of any place selling liquor within 200 feet of a residential district without a use permit, granting authority to the board to issue such permits upon the condition that it finds that "the establishment, maintenance, or operation of the use . . . will not, under the circumstances of the particular case, be detrimental to the health, safety, peace, morals, comfort, or general welfare of persons residing or working in the neighborhood. . . ." Thus, despite appellant's argument,

---

[4] Appellant's citations (*Coon* v. *Board of Public Works* (1908), 7 Cal. App. 760 [95 P. 913], and *Ex parte Sing Lee* (1892), 96 Cal. 354 [31 P. 245, 31 Am.St.Rep. 218, 24 L.R.A. 195]) invalidate legislative delegations to private persons as to issuance of permits, in the first case for a building and for the pursuit of a business in the second case, in the absence of legislative standards for the applicable administrative body. Appellant's cited case of *Hurst* v. *City of Burlingame* (1929), 207 Cal. 134 [277 P. 308], holds that such a delegation to a "majority of the owners of property" (p. 137) in a designated area fails because the zoning ordinance and the state zoning law "are hopelessly inconsistent." (P. 141.) The courts, however, have held that there is no unlawful delegation of power in legislation which requires an affirmative petition of affected persons to institute regulatory programs. *In re Bickerstaff* (1886), 70 Cal. 35 [11 P. 393], (applicant for liquor license must file petition with city council accompanied by " 'certificate signed by five respectable citizens of said city' " (p. 37)); *Davis* v. *Board of Supervisors* (1908), 7 Cal.App. 571 [95 P. 170], (no license should be granted " 'if a number of electors equal in number to a majority of the whole number of electors residing in . . . precinct . . . sign a written protest' " (p. 572)); *Ex parte Beck* (1912), 162 Cal. 701 [124 P. 543], (petition of 25 per cent of electors to determine if liquor district is to be created); *Matter of Ellsworth* (1913), 165 Cal. 677 [133 P. 272], (to the same effect); *Agricultural Prorate Com.* v. *Superior Court* (1936), 5 Cal.2d 550 [55 P.2d 495], ("petition for the formation of a district . . . must be signed by not less than fifty producers of the commodity" (p. 583)); *Brock* v. *Superior Court* (1952), 109 Cal.App.2d 594 [241 P.2d 283], ("marketing order must be submitted to the producers and handlers or assent obtained thereto from not less than 65 per cent of them" (p. 605)).

the ordinance clearly imposes upon the applicant the burden of proving compliance with the required conditions and the absence of the described detriments.

Nor do appellant's citations of *People* v. *Southern Pac. Co.* (1930), 209 Cal. 578 [290 P. 25], and *Christensen* v. *Thurber* (1953), 120 Cal.App.2d 517 [261 P.2d 312], postulate that the city attorney's opinion be accepted as a binding contemporaneous construction of the ordinance. In the first case the court held that "direct affirmative action and long acquiescence" by governmental agencies had placed a specific construction upon a statute sustaining its validity. (P. 595.) A single opinion of a city attorney written to the city council does not demonstrate such "direct affirmative action and long acquiescence." In the second case the city attorney's opinion instead of constituting an isolated expression, "was consistent with previous rulings by the city attorney on the same question. . . ." (P. 519.) These cases do not hold that one opinion of the city attorney is entitled to such "great respect" that it will be followed despite its conflict with an ordinance.

 Finally, we can discover no merit in appellant's attack upon the board's findings. The ordinance requires that as a condition for the permit the board find that the proposed use will not be detrimental to the welfare of persons residing or working in the neighborhood. Certainly the board's findings here that the permit "be denied for the reasons of peace, health, and general welfare of the people in the area," and more specifically, "because of the closeness of the bar to this property," "the noise factor there," and the danger to "pedestrian traffic" adequately demonstrate the board's inability to reach the affirmative findings required for the issuance of a permit. (See *Southern Cal. Jockey Club* v. *California etc. Racing Board, supra,* 36 Cal.2d 167, 177-178.)

 We come to the last issue of the case: the propriety of appellant's procedure to present for adjudication the question of the constitutionality of the ordinance. Our previous analysis shows our belief that the matter had properly been raised. Appellant has filed a petition for a writ of mandamus and request for declaratory relief. Despite respondents' objections, we believe appellant could properly seek to review the administrative agencies' decision by the writ and to test the constitutionality of the ordinance by declaratory relief. Nor does appellant's application for a permit foreclose it from an attack upon the constitutionality of the ordinance.

■ While mandamus is traditionally a procedure for reviewing the action of an administrative agency as to an alleged abuse of discretion (*Bleuel* v. *City of Oakland* (1927), 87 Cal.App. 594 [262 P. 477]), it may also be invoked to challenge the constitutionality of ordinances and regulations: *Reynolds* v. *Barrett* (1938), 12 Cal.2d 244 [83 P.2d 29], (validity of a zoning ordinance); *Danskin* v. *San Diego Unified Sch. Dist.* (1946), 28 Cal.2d 536 [171 P.2d 885], (constitutionality of rules regulating the use of school property for public purposes); *Roman Catholic etc. Corp.* v. *City of Piedmont* (1955), 45 Cal.2d 325 [289 P.2d 438], (constitutionality of zoning ordinance). ■ On the other hand, while an action for declaratory relief may properly test the constitutionality of a zoning ordinance (*McCarthy* v. *City of Manhattan Beach* (1953), 41 Cal.2d 879, 882 [264 P.2d 932]; *People* v. *Amdur* (1954), 123 Cal.App.2d Supp. 951, 968 [267 P.2d 445]), it is not an appropriate method for judicial review of administrative decisions (*Hostetter* v. *Alderson* (1952), 38 Cal.2d 499, 500 [241 P.2d 230]).

■ Since mandamus and declaratory relief actions can be joined (15 Cal.Jur.2d 148), appellant has properly sought a review of the agencies' decision in its petition for a writ of mandamus and a test of the constitutionality of the ordinance in its request for declaratory relief.

■ Respondents unsuccessfully contend that appellant by applying for a use permit admitted the constitutionality of the ordinance, and therefore cannot now question its validity. Although the applicant for a permit cannot, in the proceedings which he has instituted to obtain the license, challenge the constitutionality of the ordinance under which he proceeds (*Hadden, Inc.* v. *City of Inglewood* (1950), 101 Cal. App.2d 47 [224 P.2d 913]; *Rubin* v. *Board of Directors* (1940), 16 Cal.2d 119 [104 P.2d 1041]), "[t]his does not mean . . . that he has thereby waived his rights to object to the validity of the ordinance as affecting his property. After having exhausted his administrative remedies he may then, if he so desires, attack the validity of the ordinance. . . ." (*Garden Grove Congregation* v. *City of Garden Grove* (1959), 176 Cal. App.2d 136, 143 [1 Cal.Rptr. 65].) Having pursued its administrative procedures under the ordinance, appellant could properly challenge its validity in this independent action.

As we have said, the municipality retains the constitutional right to enforce a zoning ordinance which does not permit a cocktail lounge in a shopping center without a use permit,

and this prerogative has not been pre-empted by the state's generalized regulation of the sale of liquor. At a time when the unprecedented congestion of metropolitan areas demands ever greater planning and regulation, the complaint that such control invades constitutional rights carries many of the overtones of yesterday. It emanates from a philosophy of frontier individualism that is incompatible with modern living. It is reminiscent of old battle cries in a legal struggle that has long been resolved.

We affirm the judgment.

Bray, P. J., and Duniway, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied May 24, 1961.